GOLDEN, Appellant v. OAHE ENTERPRISES, INC., et al., Respondents

GOLDEN, Appellant v. OAHE ENTERPRISES, INC., a South Dakota Corporation, et al., Respondents

(240 N.W.2d 102)

(File Nos. 11224, 11511. Opinion filed March 25, 1976)

Order denying petition for rehearing April 22, 1976

**Ronald G. Schmidt,** of **Schmidt & Schroyer,** Pierre, for plaintiff and appellant.

**David L. Bergren,** of **Bergren & Duffy,** Fort Pierre, for defendants and respondents Oahe Enterprises, Inc., Donald F. Emmick and Robert Emmick.

**Thomas C. Adam,** of **May, Porter, Adam, Gerdes & Thompson,** Pierre, **William J. Rawlings,** of **Kindig, Beebe, McCluhan, Rawlings & Nieland,** Sioux City, Iowa, for defendant and respondent Charles A. Cannon, III.

**Edward M. Blando,** Special Stanley County State's Atty., Pierre, for defendant and respondent Ruth Johnson (successor in office to Eleanora LaRoche).

WILDS, Circuit Judge.

This case presents a consolidated appeal of the dismissal of two actions revolving around the exchange of personal property for shares in a corporation engaged in farming and ranching in Hughes County. Appeal No. 11224 arises from the dismissal of a replevin action venued in Stanley County. The second appeal, No. 11511, was instituted in Hughes County and is based on a sale of corporate assets and the alleged misuse of funds by corporate officers. The record is a complicated combination of files from four actions brought by these parties since January of 1968.

The plaintiff and appellant in this action is Warren Golden. Pursuant to an agreement with Oahe Enterprises, Inc., and its president Donald Emmick, defendants and respondents, Mr. Golden transferred personal property consisting of farming and ranching equipment to the respondent corporation in early January of 1967. In exchange for these assets, he was to receive

stock in the corporation. Golden was elected to the office of secretary-treasurer of Oahe Enterprises, Inc., on January 20, 1967. He became a director of the corporation shortly thereafter. The January 24, 1967 minutes of the corporation's stockholders' meeting state in part that "378 (sic) shares of stock were issued to Warren J. Golden * * *." On July 24, 1967, stock certificate #5, representing three hundred eighty-seven shares in the name of Warren Golden was executed. The certificate was never delivered to Golden; it remained a part of the corporate records and was later marked "void." All parties have agreed that this first certificate represented an incorrect number of shares.

In mid-July of 1967, Golden, through his attorney, tendered his resignation from the offices he held in the corporation and expressed his desire to withdraw as a stockholder. In November of the same year, his attorney made demand on the corporation for $19,352.32 in payment for the personal property he had transferred to the corporation. The corporation's Board of Directors authorized an offer to return the property to Golden and to negotiate a fair rental price for the use of the equipment or, in the alternative, corporate stock in the amount of $16,922.32. On December 28, 1967, stock certificate #8 representing 338.446 shares in the name of Warren Golden was executed. This certificate was also retained by the corporation.

On January 31, 1968, Oahe Enterprises, Inc., commenced the first action against Warren Golden. In this Stanley County suit the corporation alleged fraud, mistake, failure of consideration and failure to provide good title and sought a rescission of the contract or, in the alternative, a reformation of the contract to conform to the evidence. It requested that the circuit court determine the price originally agreed to or that it set a reasonable price. Golden entered a general denial and a cross-claim for the delivery of stock in the amount of $16,922.32. The trial of this action commenced in the summer of 1968 and was submitted to Circuit Judge Fred Winans in March of 1970.

In December of 1969, the Board of Directors of Oahe authorized President Emmick to sell the corporate holding for $175 per acre. Emmick was at that time engaged in negotiations

for merger and/or sale with Charles Cannon, a respondent in this action, who owned land adjacent to that held by Oahe. In January of 1970, Cannon loaned Donald Emmick $150,000. The stated purpose of the loan was to enable Emmick to buy out the interests of all the other shareholders in Oahe. On March 16, 1970, a special meeting of stockholders in Oahe was held at which Emmick was authorized to enter into an agreement for the sale of real estate owned by the corporation. Warren Golden was given no notice of the meeting. Emmick and Cannon executed a contract for the sale of the corporation's real property on March 23, 1970; the agreement was adopted and ratified at a Board of Directors meeting the next day. The agreement provided that Cannon was to assign the $150,000 promissory note he obtained from Emmick to the corporation as partial payment for the property. In April of 1970, the sale agreement was recorded in the offices of the Register of Deeds for Hughes and Sully Counties. The deed and bill of sale covering real and personal property purchased by Cannon were recorded in the same offices in September.

In a letter of November 25, 1970, Circuit Court Judge Winans advised the parties of his decision to deny the claims of Oahe and to enter findings of fact and conclusions of law in favor of Golden. He specifically found that the sale was at arms length, that the sale was not contingent upon Golden's furnishing depreciation schedules and that Golden was at all times ready and willing to perform. The trial court concluded that Golden was entitled to the immediate issuance of shares in the amount of $16,922.32. Judgment was entered on December 23, 1970.

On January 15, 1971, Golden informed the Security National Bank of Sioux City, which was acting as escrow pursuant to the sale agreement, and Cannon's attorney that he was a stockholder in Oahe Enterprises and of the December 23, 1970 judgment. Eleven days later the corporation tendered stock certificate #37 representing 150 shares and, alternatively, $16,922.32 cash in settlement of the December 1970 judgment. Golden rejected both and maintained that the judgment awarded him shares in the amount of $16,922.32 based on the value per share on January 6, 1967, the date of execution of the bill of sale covering the property which Golden transferred to the corporation. On January 29,

1971, Golden filed a motion in circuit court requesting an order amending the findings of fact and conclusions of law to conform to the above contention.

On February 5, 1971, while Golden's motion was pending, the corporation obtained a temporary restraining order restraining Golden from interfering in the business affairs of Oahe, particularly the sale of assets to Cannon. A hearing on the corporation's request for a preliminary injunction was set for February 19, 1971. The record is devoid of any indication that the hearing was held as scheduled or at any time thereafter. The preliminary injunction was neither granted nor denied.

On March 10, 1971, Judge Miller denied Golden's motion for an amendment of the judgment entered by Judge Winans in December of 1970. Two days after Judge Miller denied this request, Donald Emmick placed $16,922.32 plus $200 in court costs in escrow to be delivered to Warren Golden in satisfaction of the 1970 judgment. A second application for amendment of the judgment or in the alternative for a new trial was also denied by Judge Miller in December of 1971. An appeal from this denial was taken to this court thereafter. The appeal was dismissed by this court on May 31, 1974, upon a determination that the motion was one for a new trial and that an appeal from the denial of such a motion would not lie. Oahe Enterprises, Incorporated v. Golden, 88 S.D. 296, 218 N.W.2d 485.

On April 24, 1972, Golden instituted a replevin action against Oahe, Donald Emmick and Eleanora LaRoche, the Clerk of Courts of Stanley County. He sought possession of stock certificate #8 representing 338.446 shares or in the alternative $150,000, the cash value thereof. Treating the defendants' motion for dismissal as one for summary judgment, the trial court dismissed the replevin action on August 11, 1972. This dismissal is one of two consolidated in this appeal.

On May 20, 1974, the main action currently on appeal was commenced by Golden against Oahe, Donald Emmick, Robert Emmick and Charles Cannon. Golden requested a judgment setting aside the sale of corporate assets to Cannon, appointing a judicial-

ly supervised receivership for all corporate assets, ordering production of all corporate records and an accounting by the Emmicks, payment to the corporation by the Emmicks for loss occasioned by their misconduct, and actual and punitive damages. Golden also sought and received temporary restraining orders to prevent the respondents from interfering with, distributing, transferring or disposing of corporate assets or funds and restraining Cannon from making any further payments pursuant to the sale agreement and from assigning or transferring the promissory note he obtained from Emmick. A temporary restraining order was issued and a hearing on the request for a preliminary injunction was set for June 10, 1974.

On June 5, 1974, Cannon filed a motion for dismissal and affidavits in support thereof. Additional supporting affidavits were filed two days later. A hearing on the motion was set for June 10, 1974, the day also set for hearing on the request for a preliminary injunction.

Judge Miller dismissed Golden's suit against all defendants by memorandum opinion of July 3, 1974. His decision was based on findings consistent with six contentions raised by the defendants. No formal findings of fact and conclusions of law were entered. The informal findings were: (1) Golden's exclusive remedy as a shareholder was that set out in SDCL 47-6; (2) the issues between the parties were res judicata; (3) Golden was estopped from maintaining the action by laches; (4) Cannon was an innocent purchaser in good faith for an adequate and reasonable consideration; (5) Golden had been previously judicially restrained from maintaining such an action by an order that was still in effect and (6) Golden was not a shareholder at the time of the sale to Cannon. In this memorandum opinion, Judge Miller also denied Golden's request for dissolution of the temporary restraining order entered against him on February 5, 1971.

Appellant Golden contends that each and every reason advanced by the trial court in support of its decision to dismiss was error warranting reversal and remand for trial on the merits. Whether the findings of the trial court are supported by the evidence and the law will be addressed by considering each of the

reasons advanced separately.

## I. WAS APPELLENT A SHAREHOLDER AT THE TIME OF THE SALE OF CORPORATE ASSETS TO RESPONDENT CANNON?

Respondents have advanced a three-pronged argument in support of their contention that Golden was not a shareholder at the time of the sale of corporate assets to Cannon. They maintain that he was precluded from enjoying shareholder status because the stock certificate was never delivered to him, the stock was not paid for and Golden was never considered to be a stockholder.

It is statutorily provided that ownership of stock is represented by stock certificates. SDCL 47-3-12. It is well established, however, that such a certificate is mere evidence of ownership. Federal Deposit Ins. Corporation v. Gunderson, 1939, 8 Cir., 106 F.2d 633-634; Lake Superior Dist. Pow. Co. v. Public Service Com'n, 1947, 250 Wis. 39, 26 N.W.2d 278, 282; Beck v. Beck Inv. Co., 1946, 249 Wis. 5, 23 N.W.2d 454, 455. Issuance and delivery of the stock certificate are not essential to ownership. Lake Superior Dist. Pow. Co. v. Public Service Com'n, supra; Pacific Nat. Bank of Boston v. Eaton, 1891, 141 U.S. 227, 11 S.Ct. 984, 35 L.Ed. 702. Thus, the fact that Golden did not have possession of a stock certificate is insufficient to defeat his claim to shareholder status.

Once corporate stock is paid for, it is issued regardless of whether a stock certificate is executed and delivered. Federal Deposit Ins. Corporation v. Gunderson, 106 F.2d at 635. It is obvious from the corporate records and the findings of then Circuit Court Judge Winans that Warren Golden paid for stock in Oahe Enterprises, Inc., on January 6, 1967, when he executed a bill of sale and transferred equipment to the corporation. The records reflect entry of this same equipment as corporate assets on January 4, 1967.

The June 10, 1974 testimony of Donald Emmick at the hearing on motions to dismiss that Golden was considered a

subscriber rather than a stockholder is of no consequence. It is well recognized that stockholder status may be created by subscription for stock. Rank v. Lease Associates, Inc., 1970, 45 Wis.2d 689, 173 N.W.2d 713, 715; Boroseptic Chemical Co. v. Nelson, 1928, 53 S.D. 546, 221 N.W. 264, 265.

Respondents' contention that Golden was never considered a stockholder cannot be reconciled with the corporation's bylaws regulating the creation of shareholder status. The relevant bylaws are:

"ARTICLE II

SECTION 6: * * * The original stock transfer books shall be prima facie evidence as to who are the shareholders entitled to examine [the list of stockholders] or transfer books or to vote at any meeting of shareholders."

"ARTICLE VI

SECTION 2: * * * The person in whose name shares stand on the books of the corporation shall be deemed by the corporation to be the owner thereof for all purposes."

A provision identical to that made by Article II, Section 6 is found in SDCL 47-4-11.

These bylaws form a binding contract between the corporation and its stockholders. Allied Supermarkets, Inc. v. Grocer's Dairy Company, 1973, 45 Mich.App. 310, 206 N.W.2d 490, 493; affirmed 391 Mich. 729, 219 N.W.2d 55. In addition to the corporation and its stockholders, the bylaws are binding upon the directors and third persons who have knowledge of the same and have been brought into privity with them. American Nat. Bank v. Wheeler-Adams Auto Co., 1913, 31 S.D. 524, 141 N.W. 396. Certainly the bylaws reflect the purposes and intentions of the incorporators. Thisted v. Tower Management Corporation, 1966, 147 Mont. 1, 409 P.2d 813. Application of the above bylaws and principles of law compel the conclusion that Warren Golden was a stockholder at the time of the sale of corporate assets to Cannon

and that the corporation, its shareholders, directors and third persons in privity are bound to recognize him as such. At the time of the sale, stock certificate #8 bearing his name as the owner of 338.446 shares was included in the corporate stockbook; thus he was "deemed by the corporation to be the owner thereof for all purposes." Further evidence in support of this conclusion is found in the minutes of the corporation's annual meeting of November 6, 1967, wherein Golden is identified as a member of the corporation.

## II. WERE THE ISSUES RAISED BY THE SUIT COMMENCED BY GOLDEN ON MAY 20, 1974, RES JUDICATA?

Respondents successfully contended at the trial court level that the issues Golden sought to raise had been adjudicated in Oahe Enterprises, Incorporated v. Golden and were therefore res judicata by virtue of judgment entered therein on December 23, 1970.

The doctrine of res judicata as applied in this jurisdiction involves the following principles:

> "First, a final judgment or decree of a court of competent jurisdiction upon the merits is a bar to any future action between the same parties or their privies upon the same cause of action so long as it remains unreversed; and, second, a point which was actually and directly in issue in a former action and was there judicially passed upon and determined by a domestic court of competent jurisdiction cannot be drawn in question in any future action between the same parties or their privies whether the cause of action in the two actions be identical or different. * * * Under the first rule the res which is judicata is the cause of action. Under the second, the res which may be judicata is the particular issue or fact common to both actions." Keith v. Willers Truck Service, 1936, 64 S.D. 274 at 276, 266 N.W. 256 at 257-258.

See also Carr v. Preslar, 1951, 73 S.D. 610 at 614-615, 47 N.W.2d 497 at 500; Raschke v. DeGraff, 1965, 81 S.D. 291 at 295, 134 N.W.2d 294 at 296.

For purposes of res judicata, a cause of action is comprised of the facts which establish the right a party seeks to enforce through litigation. Carr v. Preslar, supra. A test employed by the Eighth Circuit Court of Appeals for the determination of whether a cause of action is the same for purposes of applying the res judicata doctrine is " 'whether the wrong for which redress is sought is the same for both actions.' " Hanson v. Hunt Oil Company, 1974, 8 Cir., 505 F.2d 1237, 1240. A judgment which bars a second action upon the same claim extends not only to every matter offered and received to sustain or defeat the claim or demand, but also to all other admissible matters which might have been offered for the same purpose. Cromwell v. County of Sac, 1877, 94 U.S. 351, 24 L.Ed. 195; Hanson v. Hunt Oil Company, 505 F.2d at 1239; Ramsey Tp; McCook County v. Lake, 1941, 68 S.D. 67, 298 N.W. 356; Chicago and Northwestern Railway Co. v. Gillis, 1964, 80 S.D. 617, 129 N.W.2d 532. If, however, the second action is based upon a different claim or demand, the prior judgment precludes further consideration only of those issues which were actually litigated and determined. Cromwell v. County of Sac, supra.

A determination of whether the trial court erroneously relied on res judicata in dismissing the actions below necessitates a comparison of the cause of action, the issues and the facts in Oahe Enterprises, Incorporated v. Golden and Golden v. Oahe Enterprises, Inc., Donald Emmick, Robert Emmick and Charles Cannon, III.

The parties to the original suit were the corporation and Golden. The last action has three additional parties: Donald Emmick, Robert Emmick and Charles Cannon, III. In addition, Golden brought suit on behalf of all others similarly situated and as a derivative suit.

The first action was commenced by the corporation and was based on the contract with Golden. The last action was com-

menced by Golden and is based on the sale of corporate assets to Cannon and the alleged waste and misconduct of Robert and Donald Emmick as officers of the corporation.

The first action involved questions of whether the contract should be rescinded because of fraud or connivance on the part of Golden, mistake in giving consent, or failure of consideration. The counterclaim raised the issue of whether Golden was entitled to delivery of stock in the amount of $16,922.32. The last action raises the following issues: whether the Emmicks participated in, approved and benefited from wrongful conduct as officers and directors of the corporation, including waste and misapplication of corporate assets and whether the sale of corporate assets was effected in a manner contrary to state law.

The facts determined by the court in the first action were: (a) the corporation's consent to the agreement was not obtained by mistake, fraud or connivance, (b) the corporation had received and used the property promised by Golden, (c) Golden had at all times been ready and willing to perform, and (d) Golden was entitled to stock in the amount of $16,922.32.

The above comparison of causes of action, parties, issues and factual determinations involved in these suits demonstrates a degree of dissimilarity that is far too great to support a conclusion that Golden's action is barred as res judicata. The trial court erroneously applied this doctrine in dismissing the action below.

### III. WAS GOLDEN'S ACTION BARRED BY LACHES?

To support a determination that laches bars Golden's action it must be found that he had full knowledge of the facts upon which the action is based, that regardless of this knowledge he engaged in an unreasonable delay before commencing the suit and that allowing him to maintain the action would prejudice other parties. Federal Home Loan Bank Board v. Elliott, 1967, 9 Cir., 386 F.2d 42, citing 13 Fletcher Cyclopedia Corporations (Perm.Ed.) § 5874, p. 279; cert. den., Elliott v. Federal Home Loan Bank Board, 390 U.S. 1011, 88 S.Ct. 1260, 20 L.Ed.2d 161. Laches

does not depend on the passage of time alone; the plaintiff must be chargeable with lack of diligence in failing to proceed more promptly. Chicago and Northwestern Railway Company v. Gillis, supra.

In January of 1971, shortly after learning of the corporation's proposed transaction with Cannon, Golden notified Cannon of his interest in the corporation. Within a matter of weeks, on the motion of Donald Emmick and the corporation, he was judicially restrained from taking any further action to protect this interest. He did, however, continue his efforts to obtain a clarification of the 1970 judgment. It is undeniable that a lengthy delay ensued from the time Golden learned the facts surrounding the sale of corporate assets until he filed suit in May of 1974. It is equally undeniable that the respondents have made major changes in their positions since the sale agreement was reached in March of 1970 and that they would suffer financial setbacks if Golden were allowed to maintain the action and prevailed. But the record is clear that the respondents must share the responsibility for delay and the hardships resulting therefrom. They did not apprise Golden of the proposed sale even though he was a shareholder of record. He did not acquire knowledge of the sale until nearly a year after the agreement was adopted by the members of the corporation. He was then restrained from asserting his interests by legal action instituted by the Emmicks. In a case such as this, wherein at least part of the delay is attributable to the defendants, or when the defendants have engaged in concealment, misleading tactics and misrepresentation, laches is not available as a defense. Miller v. Miller, 1951, 153 Neb. 890, 46 N.W.2d 618; Holden v. Construction Machinery Company, 1972, Iowa, 202 N.W.2d 348. The law will not sustain the defeat of Golden's claim because of a delay to which the respondents made a substantial contribution.

### IV. WAS GOLDEN JUDICIALLY RESTRAINED FROM MAINTAINING HIS 1974 ACTION AGAINST THE RESPONDENTS?

A temporary restraining order issued on February 5, 1971, was the basis of the trial court's finding that Golden's action must

be dismissed. The order restrained and enjoined Golden from interfering in the business affairs of Oahe and particularly in the sale of corporate assets to Cannon. With this temporary restraining order, Judge Miller signed an order setting a hearing on the corporation's request for a preliminary injunction enjoining Golden from the same activities curtailed by the temporary restraining order. The hearing was scheduled for February 19, 1971; the parties have acknowledged that the hearing was never held.

The temporary restraining order was issued pursuant to SDCL 21-8-11 which provides:

"If the court or judge deems it proper that the defendant, or any of the several defendants, should be heard before granting the interlocutory injunction, an order may be made requiring cause to be shown, at a specified time and place, why the injunction should not be granted, and the defendant may, *in the meantime* be restrained." (Emphasis supplied)

It is clear that the above statute contemplates restraining a defendant only until the time set for hearing on the application for an injunction.

The recognized purpose of a temporary restraining order is to suspend proceedings until the court can determine whether an injunction should issue. Becker v. Becker, 1975, 66 Wis.2d 731, 225 N.W.2d 884; Beers v. City of Watertown, 1920, 42 S.D. 441, 176 N.W. 149. Upon grant or refusal of the injunction, the temporary restraining order terminates automatically. Id. Although there is no proof on the record that the injunction requested by Oahe was granted or refused, a finding that the temporary restraining order remained in effect for more than three years ignores the inherent limitations of such an order. The temporary restraining order issued against Golden was effective only until the date set for hearing, February 19, 1971. When that date passed without action on the request for an injunction, the temporary restraining order terminated by operation of law. It had no legal effect at the time Golden instituted his action against

these respondents and therefore could not bar him from maintaining this action.

## V. IS THE EXCLUSIVE REMEDY AVAILABLE TO GOLDEN CONTAINED IN SDCL 47-6?

Procedures to be followed in the sale of corporate assets and an avenue for dissenting shareholders are established by SDCL 47-6. After a corporation's board of directors has passed a resolution recommending the sale of all or substantially all of the corporate assets, the proposal for sale must be submitted to a vote of the shareholders. SDCL 47-6-19. The stockholders · are to be notified of the meeting and its purpose a minimum of twenty days prior to the date for which it is scheduled. SDCL 47-6-20. A shareholder who wishes to dissent to the proposed sale must submit a written objection prior to or at the meeting. If the resolution is adopted by a two-thirds vote of the shareholders, a dissenting shareholder may, within ten days of the date upon which the vote was taken, make demand upon the corporation for payment of a fair value for his or her shares. A shareholder who fails to make such demand within ten days is bound by the terms of the proposal. SDCL 47-6-24.

The corporation must pay a dissenting shareholder the fair value of his shares as of the day prior to the date upon which the vote was taken, excluding any appreciation or depreciation attributable to anticipation of the sale. SDCL 47-6-25. Within ten days of the date upon which a sale is effected, the corporation must notify each dissenting shareholder and make an offer to pay for his or her shares at a specified price. The notice and offer are to be accompanied by the latest available corporate balance sheet and a profit and loss statement for the twelve-month period ending on the date of the balance sheet. SDCL 47-6-28. If a price is agreed upon within thirty days after the date upon which the sale is effected, payment must be made for the dissenting shareholder's stock within ninety days of the date of the sale. SDCL 47-6-29. If the dissenting stockholder and the corporation cannot agree on an acceptable price, either may petition a court of competent jurisdiction for determination of a fair value. SDCL 47-6-30. Within twenty days of demanding payment for his or her

shares, a dissenting stockholder must submit his or her stock certificate to the corporation for a notation of the demand. Upon failure to submit the certificates for such a notation, the corporation may terminate the rights of the dissenting stockholder to surrender his certificates and collect a fair and reasonable value therefor. SDCL 47-6-38.

 Respondents urge that this remedy is the only one available to Golden. To sustain that contention would be the equivalent of holding that Golden had no remedy at all, for there was no possibility that he could comply with the requirements of the chapter. Procedural requirements which are set forth in statutes creating a right to appraisal and payment for shares owned by a dissenting shareholder must be complied with. Rath v. Rath Packing Company, 1965, 257 Iowa 1277, 136 N.W.2d 410, 415; Poss v. Rossen-Poss Agency, Inc., 1966, 3 Mich.App. 726, 143 N.W.2d 616. Golden could not fulfill the requirement that a written objection be submitted prior to or at the meeting because he did not receive notice of the meeting. He could not have demanded payment for his shares within ten days of the shareholders' approval since he did not acquire knowledge of it until many months later. He could not submit his stock certificate to the corporation within twenty days of making demand for payment so that notation of demand could be made thereon because the certificate was retained as part of the stockbook instead of being delivered to him. The record contains no indication that the respondents met their responsibilities with regard to obtaining shareholder approval and they will not be allowed to hold the shareholders to requirements they disregarded. A conclusion to the contrary would be particularly inequitable in light of the fact that the respondents' actions prevented the appellant from complying with the statutory procedure.

## VI. WAS CANNON AN INNOCENT PURCHASER IN GOOD FAITH FOR VALUE?

 The final issue raised by the trial court's dismissal is whether Golden must be precluded from maintaining his action because Cannon was an innocent purchaser in good faith. To enjoy the privileges of an innocent purchaser one must make a pur-

chase for value, in good faith and without notice of any outstanding claim. Northern Pacific Railway Co. v. Advance Realty Co., 1956, N.D., 78 N.W.2d 705; Universal C. I. T. Credit Corporation v. Vogt, 1957, 165 Neb. 611, 86 N.W.2d 771. Some guidance in making a determination of whether one is a purchaser in good faith is found in King Cattle Co. v. Joseph, 1924, 158 Minn. 481, 198 N.W. 798, wherein the following test is employed:

> "Were the circumstances under which the [property was] offered to defendant such as to cast suspicion on the title and lead a prudent man to make [inquiry] * * * ?
>
> "Defendant may have been ignorant of the true state of affairs, but ignorance due to negligence is the equivalent of notice, and want of notice is an essential element of bona fides, as that term is used in equity jurisprudence." 198 N.W. at 800.

These judicially developed qualifications for an innocent purchaser in good faith must be considered in this case in conjunction with SDCL 17-1-4 which provides:

> "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry * * * with reasonable diligence, is deemed to have constructive notice of the fact itself."

Donald Emmick testified on July 10, 1974, in support of the respondents' motions to dismiss, that he told Cannon of the pending action with Golden prior to the date of the sale agreement. He described the action to Cannon as one to rescind a subscriber's application for stock. He further testified that he told Cannon that Golden did not want any stock in the corporation. Cannon did not testify in support of the motions for dismissal. Emmick's testimony reveals that Cannon had actual knowledge of the suit in which the corporation was involved. Reasonable persons might have found that this was sufficient to charge him with constructive notice of an outstanding claim against the corporation. If such a finding were made, Cannon could not enjoy the status of an innocent purchaser in good faith.

The issue should have been submitted to a finder of fact. The trial court erred in concluding as a matter of law that Golden's suit should be dismissed because Cannon was an innocent purchaser in good faith. However, we are not sending the case back for a finding of fact on this issue in view of our holding (infra) that the sale of corporate assets to Cannon will not be set aside.

## CONCLUSION

Based upon the above determination that the dismissal of Golden's action cannot be supported by the conclusions of law reached by the trial court, No. 11511 is hereby remanded to the trial court for disposition in accordance with the instructions of this court. It is our conclusion, as set out above, that Golden was the owner of record of 338.446 shares at the time of the sale. The trial court shall order delivery of stock certificate #8 representing said number of shares to Golden.

The respondent corporation has since December 1970, refused and failed to deliver to Golden the stock awarded by the decision of the circuit court, that is, the $16,922.32 in stock, valued as of January 1967, as represented by stock certificate #8. The corporation has repeatedly denied Golden the exercise of his statutory shareholder rights. Accordingly, it is hereby ordered that Oahe Enterprises, Inc., be dissolved with an accounting made of the corporation's financial affairs to appellant Golden. Appellant would then be entitled to his pro rata share of the proceeds from the sale of corporate assets upon dissolution and the winding up of the corporation's affairs. If this procedure is not followed promptly, appellant should seek the assistance of the Attorney General in bringing a dissolution action under SDCL 47-7-26(3).

Since the respondents did not comply with the statutory procedural requirements in the sale of all or substantially all of the corporate assets, it would be entirely in order for this court to direct that the sale be set aside. However, we are cognizant of the fact that Golden is the owner of less than one-third of the outstanding shares and would not be able to significantly affect a vote of the shareholders on the proposed sale. Therefore, voiding

the sale and requiring compliance with the statutory procedure would accomplish no change in the result. The sale of corporate assets to Cannon will not be set aside.

■ The issues as to the wrongful appropriation of corporate assets by respondents Donald Emmick and Robert Emmick and the issues of fraud and actual and exemplary damages resulting therefrom are remanded to the trial court for trial upon the merits. Although Cannon may or may not have been an innocent purchaser of the assets of Oahe Enterprises, Inc., appellant Golden has failed to state a cause of action against him for fraud which would be a basis for actual damages and which is a necessary predicate for exemplary damages. SDCL 21-1-4. Thus the trial court properly dismissed this suit as to Cannon.

All assignments of error not disposed of herein are rendered moot by the above disposition of No. 11511.

The judgment of the trial court in No. 11224 is hereby vacated and the issues raised on appeal are rendered moot by the disposition of No. 11511.

Judgment will be entered by the trial court in accordance with the foregoing.

All the Justices concur.

WILDS, Circuit Judge, sitting for WINANS, Justice, disqualified.