PRODUCTION CREDIT ASSOCIATION OF THE MIDLANDS, a federally chartered corporation, Plaintiff and Appellee,

v.

Mary WYNNE and John Holm, d/b/a Wynne and Holm, a South Dakota Professional Corporation, Defendants and Appellants,

and

First Bank of South Dakota, N.A., a South Dakota Banking Corporation. Defendant and Appellee.

Nos. 17218, 17298.

Supreme Court of South Dakota.

Argued March 19, 1991.

Decided Aug. 21, 1991.

---

**736**

Brent A. Wilbur of May, Adam, Gerdes & Thompson, Pierre, for plaintiff and appellee, Production Credit Ass'n.

Mary T. Wynne and John O. Holm, Sioux Falls, for defendants and appellants.

Haven L. Stuck, Rapid City, for defendant and appellee First Bank of South Dakota.

MILLER, Chief Justice.

This case involves two separate appeals from two separate orders granting partial summary judgment in favor of Production Credit Association of the Midlands (PCA). Although these appeals have not been consolidated, they are combined herein because of the commonality of the parties and because they stem from the same factual setting.

Appeal # 17218 is from the trial court's order granting summary judgment (in reality a partial summary judgment) dated May 15, 1990, which generally held that PCA's perfected security interest in the proceeds of sales of livestock was superior to a certain attorneys' lien filed by appellants Wynne & Holm (a law firm previously located in Rapid City, South Dakota).

Appeal # 17298 is from another partial summary judgment, dated August 6, 1990, granting PCA judgment on Count III of its amended complaint thus adjudging Wynne & Holm liable in negligence for interest lost through its failure to place certain escrow proceeds in an interest-bearing account.

For reasons stated later herein, we reverse and remand.

## FACTS

This litigation has a complicated factual scenario. Because of the limited nature of the issues before us, we have attempted to present a simplified recitation herein.

Peter and Hazel Dupris (members of the Cheyenne River Sioux Tribe) were ranchers who had transacted business with PCA for nearly twenty years. PCA provided Dupris an operating line of credit, secured by Dupris' cattle, equipment and personal property.

The ranch was financially successful until the early 1980's when Dupris incurred successive annual operating losses. Dupris allege that because of these losses they liquidated their cattle herd and placed the funds into an escrow account in Eagle Butte, South Dakota. Those funds were subsequently transferred to First Bank of South Dakota. (Apparently because a higher rate of interest could be earned.)

Dupris then filed a lender liability suit[1] against PCA in federal district court. PCA counterclaimed, alleging that Dupris owed it the sum of $116,014 in "on demand" promissory notes. PCA further alleged that the notes were not paid after demand. As part of its counterclaim, PCA sought to have the proceeds from the sale of the cattle turned over to it.

---

1. Alleging, among other things, breach of fiduciary duty, race discrimination under the Equal Credit Opportunity Act, 15 U.S.C. § 1691; breach of covenant of good faith and fair dealing; and fraud.

At the federal trial, the judge entered judgment in favor of PCA on its counterclaim and submitted the issues raised by Dupris to the jury, which found in favor of PCA.[2]

Sometime earlier, Dupris consigned cattle to three different sale barns in this state. During the pendency of the federal court action, Dupris retained Wynne and Holm to attempt to collect monies due them from the sale and/or death/loss of their cattle while in the custody of these sale barns. Wynne and Holm were successful in those collection actions.

Although it is unclear from the record, apparently these monies (the proceeds from the sale and/or death/loss of Dupris' cattle recovered by Wynne & Holm) were likewise deposited in the escrow account in First Bank. The escrow account evidently was used to purchase a certificate of deposit. Ultimately, this CD matured and was not placed into an interest-bearing account or instrument.

Later, Wynne & Holm filed two attorneys' liens for their fees in collecting these proceeds.[3] The first is dated in May, 1988, in the amount of $9439 (based upon a $22,-170 recovery they had made for Dupris); the other is dated in October, 1988, for $2412 (based on a $9102 recovery).

PCA, after completion of the federal action, brought suit in state court alleging, among other things, that it has a lien on the proceeds of the entire escrow account which is superior to any attorneys' lien of Wynne and Holm. Therefore, PCA asserted that it was entitled to receive all of the proceeds currently deposited with First Bank. It also asserted that Wynne & Holm, as trustees and custodians of the escrow account, were negligent in their failure to place the escrowed funds in some

interest-bearing account, and as a result interest thereon was lost.

As noted earlier, the trial court granted two partial summary judgments to PCA and against Wynne & Holm.[4]

In its first summary judgment (# 17218), the trial court held that PCA's perfected security interest was superior to Wynne & Holm's attorneys' lien of May, 1988. However, it stated that "[t]here are factual issues not yet resolved ..." (although it did not indicate what they were), which prevented entry of summary judgment on the second attorneys' lien. It thus held that PCA was entitled to a priority on all the funds recovered by Wynne & Holm in their first action against the sale barns.

In its second partial summary judgment (# 17298), the trial court determined that Wynne and Holm were trustees of the account and were the only persons who had control over this account. Furthermore, the trial court determined that Wynne and Holm were the only people to receive notice of the maturity of the certificate of deposit and were the only people who could renew it. Thus, the trial court determined that it was their duty as trustee to preserve those funds and place them drawing interest for the benefit of the trust. Therefore, the trial court held Wynne and Holm liable for the lost interest and granted PCA's motion for summary judgment.

STANDARD OF REVIEW

This court reviews summary judgments under the premise that affirmance of such a judgment is proper if there are no genuine issues of material fact and there exists any basis which would support the trial court's ruling. *Trammell v. Prairie States Ins. Co.*, 473 N.W.2d 460 (S.D.1991); *Breen v. Dakota Gear & Joint Co., Inc.*, 433 N.W.2d 221 (S.D.1988). When addressing a motion for summary judgment (1) the evidence must be viewed most favorably to

---

2. This was affirmed by the Eighth United States Circuit Court of Appeals in an unpublished decision.

3. The record contains a third attorneys' lien which is not at issue here.

4. They became final appealable judgments because the trial court made an express determination that there is no just reason for delay and expressly directed entry of judgment. SDCL 15–6–54(b).

the nonmoving party; (2) the movant has the burden of proof to clearly show there is no genuine issue of material fact and that he is entitled to judgment as a matter of law; (3) summary judgment is not a substitute for trial; (4) a belief that the nonmoving party will not prevail at trial is not an appropriate basis for granting the motion on issues not shown to be sham, frivolous, or unsubstantiated; and (5) summary judgment is an extreme remedy and should be awarded only when the truth is clear and reasonable doubts touching upon the existence of a genuine issue of material fact should be resolved against the movant. *American Indian Agr. Credit v. Fort Pierre,* 379 N.W.2d 318 (S.D.1985).

## ISSUE I

### WHETHER PCA'S ACTION FOR CLAIM AND DELIVERY WAS BARRED BY RES JUDICATA.

Wynne and Holm initially assert that the issue of claim and delivery is barred by res judicata, collateral estoppel, and waiver by virtue of the federal action. Further, they assert that PCA's claim to the proceeds held in escrow is inferior to their liens. Finally, they argue that there are indispensable parties[5] (Peter Dupris and the estate of Hazel Dupris) not within this action which are necessary to a resolution of this action.

"Res judicata serves as a claim preclusion to prevent litigation of an issue actually litigated or which could have been properly raised and determined in a prior action." *Bank of Toronto v. Lengkeek,* 436 N.W.2d 271, 275 (S.D.1989); *Black Hills Jewelry Mfg. v. Felco Jewel Ind.,* 336 N.W.2d 153, 157 (S.D.1983); *Schell v. Walker,* 305 N.W.2d 920 (S.D.1981); *Golden v. Oahe Enterprises Inc.,* 90 S.D. 263, 240 N.W.2d 102 (1976).

In the federal district court litigation, PCA made a motion for "turnover of funds" against Dupris. In the state court

proceedings PCA also sought an order for claim and delivery issued pursuant to SDCL ch. 21–15, requiring First Bank to immediately turn over to PCA all sums in excess of the sums claimed by Wynne and Holm pursuant to their attorneys' liens.

Wynne and Holm assert that PCA brought this action for claim and delivery in the United States District Court. They argue that PCA was denied that relief in federal court on the merits but have resurrected this identical claim involving the identical proceeds of the escrow account before the state court.

The federal district court (in its post-trial order) did deny PCA's motion for "turnover of funds." However, that court's order states as follows:

*[T]his Court cannot determine whether [Wynne & Holm] have an interest in the escrow account superior to that of [PCA].* Besides out of court settlement, the best way to resolve the present dispute is for [PCA] to seek to execute on the entire escrow fund. First Bank of Rapid City could then bring an interpleaded action *or either party could seek to bring a state court case.* Though [PCA] is a federal instrumentality who could seek removal of an action to federal court, *it would be best for a South Dakota court to adjudicate this novel point of South Dakota law.* Therefore, it is

ORDERED that *[PCA's] motion for turnover of funds* is denied. It is further

ORDERED that plaintiffs' motion for recognition of an attorney's lien is denied. (Emphasis added.)

Here, the federal court denied PCA's claim for "turn-over of funds" because it wanted a state court ruling on the priority issue. PCA then brought this action in state court pursuant to the federal court's suggestion. Not only was the federal court's denial of the motion not a final decision, Wynne & Holm's suggestion that

---

5. Assuming, arguendo, that Wynne & Holm, P.C., have preserved this argument on appeal, on remand we urge the trial court to consider *In re Midwest Milk Monopolization Litigation,* 730 F.2d 528, 532 (8th Cir.1984); *Smith v. Albrecht,* 361 N.W.2d 626, 628 (S.D.1985); *Whiting v. Hoffine,* 294 N.W.2d 921 (S.D.1980); *Shangreaux v. Westby,* 281 N.W.2d 590 (S.D.1979); SDCL 15–6–19(a); 15–6–19(b); 15–6–24(a) (intervention of right).

res judicata applies is ludicrous. *Bank of Toronto, supra; Black Hills Jewelry Mfg., supra; Schell, supra; Luedtke v. Koopsma*, 303 N.W.2d 112 (S.D.1981); *Golden, supra; Carr v. Preslar*, 73 S.D. 610, 47 N.W.2d 497 (1951).

## ISSUE II

### THE CIRCUIT COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT ON THE PRIORITY ISSUE.

■ As stated earlier, the trial court's order granting summary judgment stated that the perfected security interest of PCA is prior and superior to that of one of the attorneys liens[6] claimed by Wynne and Holm.

Concerning this matter, the federal judge stated (in pertinent part) as follows:

> Certain factual issues concerning the three collection cases are unresolved. *It is unclear whether defendant could have recovered on these checks without suing the sale barns and whether defendant would be enjoying an inequitable windfall from the efforts of plaintiff's attorneys if defendant were to obtain the entire escrow fund. it (sic) is also unclear whether the parties in creating the escrow account or in agreeing to deposit the monies gained by the lawsuits explicitly or implicitly reached an agreement concerning payment of the attorneys fees incurred in the collection cases. At trial, neither party entered any evidence pertaining to these questions.*

Wynne and Holm allege that PCA refused to endorse sale barn checks resulting in Dupris' hiring of Wynne and Holm to sue the sale barns to collect new checks. Wynne and Holm were successful in obtaining recovery of the proceeds from the sale of Dupris' cattle from the sale barns, and Wynne and Holm have not been paid for their services.

We agree with the United States District Court and reverse and remand this case to the trial court because we believe a factual dispute exists as to whether the parties (including PCA) implicitly or explicitly reached an agreement as to the payment of attorneys' fees in the collection action against the sale barns. *Wang v. Wang*, 447 N.W.2d 519 (S.D.1989); *Limpert v. Bail*, 447 N.W.2d 48 (S.D.1989); *First Western Bank v. Livestock Yards*, 444 N.W.2d 387 (S.D.1989); *Dahl v. Sittner*, 429 N.W.2d 458 (S.D.1988); *Larson v. Kreiser's, Inc.*, 427 N.W.2d 833 (S.D.1988); *Zeeb v. Handel*, 401 N.W.2d 536 (S.D.1987).

## ISSUE III

### THE CIRCUIT COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT ON THE LOST INTEREST ISSUE.

The parties to the escrow agreement agreed, in pertinent part:

> KNOW ALL MEN BY THESE PRESENTS, that the undersigned Peter Dupris and Hazel Dupris (Dupris), Production Credit Association of the Midlands (PCAM) and First Bank of Rapid City (Bank) enter into this Escrow Agreement dated this 23rd day of March, 1989.

> That Dupris, PCAM, and Bank hereby agree to escrow the amount of $112,151.85 representing all funds arising out of sale of the Peter Dupris cattle with the exception of those proceeds of the

---

6. SDCL 16–18–21 provides:

An attorney and counselor at law has a lien for a general balance of compensation in and for each case upon:

(1) Any paper belonging to his client which has come into his hands in the course of his professional employment in the case for which the lien is claimed;

(2) Money in his hands belonging to his client in the case;

(3) Money due his client in the hands of the adverse party or attorney of such party, in an action or proceeding in which the attorney claiming the lien was employed, from the time of giving notice in writing to such adverse party or attorney of such party, if the money is in the possession or under the control of such attorney, which notice shall state the amount claimed and in general terms for what services; after judgment in any court of record such notice may be given and the lien made effective against the judgment debtor by entering it in the judgment docket.

sale of cattle currently being disputed by Ken Geisinger.

That the Bank agrees to act as an escrow agent and to hold this escrow agreement and such funds on the following terms and conditions:

That the funds shall be deposited into a certificate of deposit being made in the name of *Wynne and Holm, P.C. as trustee for Peter Dupris and Hazel Dupris and the Production Credit Association of the Midlands.* (Emphasis added.)

That Bank shall not distribute any funds except upon written consent of Dupris and PCAM, or upon the receipt of a certified copy of an Order entered by the United States District Court, District of South Dakota, Central Division, ordering the release of such funds and directing the manner of such release.

That Bank shall assume no responsibility whatever, except to receive and hold this Escrow Agreement and funds, and to release the same as herein provided.

PCA argues that Wynne and Holm failed to ensure that the funds entrusted to them under this escrow agreement were earning interest. They assert that a certificate of deposit, in the amount of $115,000.00, matured on May 24, 1989, and Wynne and Holm had a fiduciary duty to place the monies into an interest-bearing account, and that they negligently failed to do so.

Wynne and Holm assert that they were trustee for Dupris for the limited purpose of depositing the monies into the escrow account. They assert that the wording of the escrow agreement was used to facilitate the transfer of funds from the Eagle Butte Bank to First Bank. Wynne and Holm argue that PCA drafted the escrow agreement and therefore any ambiguity should be construed against PCA. We agree.

The effects and terms of a contract are questions of law to be resolved by the court.... On appeal, this court can read a contract itself without a presumption in favor of the trial court's determination.... The court is to enforce and give effect to the unambiguous language and terms of the contract.... Whether the language of a contract is ambiguous is a question of law for the court.... A contract is ambiguous when application of rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct....

*Baker v. Wilburn,* 456 N.W.2d 304, 306 (S.D.1990) (citations omitted).

█ "Ambiguities arising in a contract should be interpreted and construed against the *scrivener." Forester v. Weber,* 298 N.W.2d 96, 97 (S.D.1980) (emphasis added) (citing *City of Sioux Falls v. Henry Carlson Co.,* 258 N.W.2d 676 (S.D.1977)); *Clements v. Gabriel,* 472 N.W.2d 480 (S.D.1991) (Henderson and Wuest, Justices, dissenting). This is a rule of *construction* to be applied against one who drafted an ambiguous contract. *Clements, supra; Weisser v. Kropuenske,* 55 S.D. 558, 561, 226 N.W. 760, 761 (1929). Any doubts arising from an ambiguity of language in a contract should be resolved against the speaker or writer, because he can, by exactness of expression, more easily prevent mistakes in meaning than the one with whom he is dealing. *Clements, supra; Enchanted World Doll Museum v. Buskohl,* 398 N.W.2d 149, 152 (S.D.1986); *City of Sioux Falls, supra.*

SDCL 55–1–4 provides:

Subject to the provisions of § 43–10–4 concerning express trusts in relation to real property an express trust is created as to the trustor and beneficiary by any words or acts of the trustor indicating with reasonable certainty:

(1) An intention on the part of the trustor to create a trust; and

(2) The subject, purpose, and beneficiary thereof.

In a letter to Wynne and Holm, PCA's staff attorney stated:

Enclosed is the most recent Escrow Agreement and signature card, executed by Ronald D. Ensz on behalf of PCAM. I understand that you will obtain your clients' signatures and then forward the Agreement and signature card to First Bank.

From the way the Depositors are listed on the Certificate of Deposit, *it could be interpreted that Wynne & Holm, P.C., is acting as trustee for PCAM. Of course, PCAM would not agree with such an arrangement.* Therefore, I telephoned Jerry Harder of First Bank and he assured me that Wynne & Holm, P.C., is acting only as trustee for the Dupris. (Emphasis added.)

However, PCA submitted the affidavit of Sam Benne (Vice President of First Bank) who stated: "[T]he escrow agreement is specific in allowing only Wynne and Holm to take charge of the funds subject to the certificate of deposit."

Questions remain. Assuming Wynne and Holm were trustees: For what purposes were they trustees? For whom were they trustees? What was the nature and extent of their trust responsibilities?"

██ We believe that there exists a genuine issue of material fact under the terms of the parties' agreement which precludes summary judgment in this case. *Limpert, supra; First Western Bank, supra; Zeeb, supra.* Particularly in light of the nature of the charge by PCA that Wynne & Holm "negligently failed to" insure that the funds were drawing interest. Negligence actions are generally inappropriate for summary judgment. *Laber v. Koch,* 383 N.W.2d 490 (S.D.1986); *Lalley v. Safway Steel Scaffolds, Inc.,* 364 N.W.2d 139 (S.D.1985); *Myers v. Lennox Co-op Ass'n.,* 307 N.W.2d 863 (S.D.1981); *Wilson v. Great Northern Railway Company,* 83 S.D. 207, 157 N.W.2d 19 (1968).

Reversed and remanded.

HENDERSON, WUEST, SABERS and AMUNDSON, JJ., concur.