Janice BOLLINGER, Plaintiff
and Appellant,

v.

Pearl ELDREDGE, as Trustee of
Henrietta Sandquist Trust,
Defendant and Appellee.

No. 18344.

Supreme Court of South Dakota.

Considered on Briefs Feb. 15, 1994.

Decided Aug. 17, 1994.

H.I. King of Tonner, Tobin and King, Aberdeen, for plaintiff and appellant.

Dale A. Wein of Ronayne and Wein, Aberdeen, for defendant and appellee.

AMUNDSON, Justice.

Janice Bollinger appeals the trial court's decision granting partial summary judgment on her claim for unjust enrichment against Pearl Eldredge, as trustee of the Henrietta Sandquist Trust. Bollinger also appeals the trial court's refusal to remove Eldredge as trustee of the Henrietta Sandquist Trust. We affirm in part, reverse in part and remand.

## FACTS

This action involves a testamentary trust created by the last will and testament of Henrietta Sandquist (Sandquist) which was executed on November 10, 1975. Sandquist's granddaughter, Pearl Eldredge (Eldredge) is trustee. Janice Bollinger (Bollinger), Sandquist's daughter, is the primary beneficiary of this trust and her four children, including Eldredge, are the secondary beneficiaries.

From the age of twelve, Eldredge and her three younger siblings were raised by Sandquist rather than Bollinger. As a result, Eldredge and Sandquist developed a close relationship. In her later years, Sandquist depended on Eldredge's assistance a great deal.

Sandquist died on or about December 7, 1987. When her last will and testament was admitted to probate, Eldredge and Bollinger's sister, Joanne Mickelson (Mickelson) were appointed as co-executrixes. Bollinger, as an heir to the estate, appeared personally and with counsel during the Spink County Circuit Court's administration of Sandquist's estate. At trial, Bollinger testified that she wanted to contest the will but was not able to get a lawyer to take her case. The final decree of the estate was entered on September 26, 1990. No appeal was taken from this final decree.

As trustee, Eldredge must manage and administer the trust corpus which consists of two quarters of land in Spink County, sixty-eight shares of Northern States Power stock, and $19,055 in cash. Sandquist's trust instructed:

> During the life of JANICE BOLLINGER: (1) My Trustee shall pay to [Janice Bollinger] in monthly or other convenient installments the net income derived from said trust. My Trustee may make such advances from the trust property to my said daughter, JANICE BOLLINGER, as my Trustee, PEARL ELDREDGE, in her sole discretion deems necessary and advisable. (2) My Trustee shall pay to or apply for the benefit of my daughter, Janice Bollinger, from time to time such sums from the principal of this "HENRIETTA C. SANDQUIST TRUST" as my Trustee in her sole discretion deem necessary or advisable, in addition to any other funds known to my Trustee to be available to her for those purposes, to provide for her

proper care, support, maintenance, and education.

While the estate was being settled, Bollinger and her husband moved from Texas to a Spink County farmhouse which eventually became part of the trust corpus. Bollinger and her husband made repairs to the house during the estate's administration. Bollinger testified that Eldredge assured her the trust would pay for repairs to the farmhouse. Contrarily, Eldredge maintains she tried to discourage Bollinger from making the repairs and Bollinger did not know the trust was going to be created by the will.

Bollinger claims she forwarded bills to Eldredge and requested payment from the trust. Bollinger testified that Eldredge refused to pay these and mailed them back to her. The majority of these requests for payment were made prior to the final decree of Sandquist's estate; however, requests continued after the final decree.

After her husband died in July of 1989, Bollinger no longer desired to reside on the farm in rural Spink County. She then requested funds from the trust to buy a house in Texas for a facility to care for fully disabled veterans. Bollinger also requested funds for a college education [1] to become a licensed vocational nurse.[2] These requests were accompanied with no information about the price of the residence in Texas, whether the Veteran's Administration approval had been given, projected income, expenses, or potential rate of return. Eldredge received no information regarding the school Bollinger planned to attend to become a licensed nurse. Due to the insufficiency of these requests, all were rejected by the trustee.

During the administration of the estate and trust, personal relations between Eldredge and Bollinger deteriorated to a point that they communicated only through their respective attorneys. Bollinger does not have a strong relationship with any of her four children.[3] In fact, Bollinger testified

---

1. Bollinger had an eighth-grade education until she earned her GED in 1984.

2. Bollinger claims she is required to be a Licensed Vocational Nurse for her proposed veteran's home to qualify for government funding.

3. She and her other daughter are not on speaking terms. One of Bollinger's sons will not provide her with his home address or telephone number. On one occasion, Bollinger's other son threatened that if she would not leave his office he would call the police.

she would rather see the corpus of the trust go to lawyer's fees than her own children.

Bollinger brought this action to remove Eldredge as trustee of the Sandquist Trust and for reimbursement from the trust for repairs to the farmhouse. Eldredge filed a motion for partial summary judgment on the reimbursement claim, arguing neither the trust nor trustee were in legal existence at the time of the repairs and the claim is barred by res judicata.[4] The motion for partial summary judgment was granted on the "unjust enrichment" claim and, after a trial, the court refused to remove Eldredge as trustee of the Sandquist trust. Bollinger appeals.

## ISSUES

1. Did the trial court err by granting partial summary judgment on Bollinger's claim for unjust enrichment?

2. Did the trial court err by refusing to remove Eldredge as trustee of the Henrietta Sandquist Trust?

## STANDARD OF REVIEW

The principal considerations for reviewing a grant or denial of summary judgment were summarized in *Waddell v. Dewey County Bank*, 471 N.W.2d 591, 593 (S.D.1991) (citations omitted):

In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material

4. The trial court's decision states that Eldredge moved for "partial summary judgment on this cause of action claiming res judicata and the fact that neither the Trust nor Trustee were in legal existence at the time of the repairs and thus cannot be held financially responsible under a theory of unjust enrichment."

5. SDCL 30-21-34 states:

issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

## DISCUSSION

### ISSUE I

Did the trial court err by granting partial summary judgment on Bollinger's claim for unjust enrichment?

The trial court granted Eldredge's motion for summary judgment on three grounds: res judicata, improper collateral attack, and the trust did not exist when the repairs were made.

### RES JUDICATA

First, the trial court held that Bollinger's claim is barred by res judicata. The trial court barred the claim because the repairs were made during the probate of Sandquist's estate and, therefore, the claim should have been raised at probate. In its decision, the court stated that Eldredge rejected Bollinger's claim, pursuant to SDCL 30-21-34,[5] and Bollinger failed to commence suit within thirty days.

Unfortunately, the record does not indicate whether this claim was rejected under SDCL 30-21-34. Bollinger's answers to Eldredge's second set of interrogatories states the repair bills were mailed to Eldredge and "[Eldredge's] only response was she mailed them back...." Consequently, on appeal we are unable to conclusively determine what occurred when Bollinger made her request to Eldredge. Nothing in the record indicates that this claim was made against the estate;

An executor or administrator may reject any claim after it has been presented or filed by mailing a notice of rejection to the claimant at the address shown on the claim, informing the claimant that the claim was rejected. The notice shall state the reason for the rejection and shall inform the claimant that the claimant has thirty days under § 30-21-41 to bring suit on the claim or it will be forever barred.

rather, Bollinger has consistently maintained her claim against the Sandquist Trust.

■ We must determine whether the doctrine of res judicata applies to this claim.

The doctrine of res judicata as applied in this jurisdiction involves the following principles:

'First, a final judgment or decree of a court of competent jurisdiction upon the merits is a bar to any future action between the same parties ... upon the same cause of action so long as it remains unreversed; and, second, a point which was actually and directly in issue in a former action and was there judicially passed upon and determined by a domestic court of competent jurisdiction cannot be drawn in question in any future action between the same parties ... whether the cause of action in the two actions be identical or different. * * * Under the first rule the res which is judicata is the cause of action. Under the second, the res which may be judicata is the particular issue or fact common to both actions.'

*Golden v. Oahe Enterprises, Inc.*, 90 S.D. 263, 275, 240 N.W.2d 102, 109 (1976) (quoting *Keith v. Willers Truck Service*, 64 S.D. 274, 276, 266 N.W. 256, 257–58 (1936)), *modified by Black Hills Jewelry Mfg. v. Felco Jewel Ind.*, 336 N.W.2d 153 (S.D.1983).

■ In determining whether a cause of action is the same for purposes of applying the doctrine of res judicata, this court tests " 'whether the wrong for which redress is sought is the same for both actions.' " *Golden*, 90 S.D. at 276, 240 N.W.2d at 109 (quoting *Hanson v. Hunt Oil Company*, 505 F.2d 1237, 1240 (8th Cir.1974)). "A judgment which bars a second action upon the same claim extends not only to every matter offered and received to sustain or defeat the claim or demand, but also to all other admissible matters which might have been offered for the same purpose." *Golden*, 90 S.D. at 276, 240 N.W.2d at 109 (citing *Cromwell v. County of Sac*, 94 U.S. 351, 24 L.Ed. 195 (1877)). "*If, however, the second action is based upon a different claim or demand the prior judgment precludes further consideration only of those issues which were actually litigated and determined.*" *Hanson*, 505 F.2d at 1240 (emphasis added).

This is the first time Bollinger has made this claim against the trust. No court has ruled on a prior claim for repairs against the estate. The claim was supposedly rejected by Eldredge, trustee and co-executrix, and was never considered as a contested claim against the estate. SDCL 30–21–32. This action is brought not against the estate or its co-executrix but against Eldredge, as trustee of the Sandquist Trust. Therefore, res judicata does not apply to this claim because it has never been adjudicated by a court. 46 Am.Jur.2d *Judgments* § 394 (1969).

## IMPROPER COLLATERAL ATTACK

■ Secondly, the trial court held that this was an improper collateral attack upon the final probate decree. The court held that the attack was improper under SDCL 30–23–38.[6] "Once a court has ... issued the decree of distribution, the decree is subject to revision only upon appeal or in some proceeding that constitutes a direct attack." *Miller v. Thode*, 372 N.W.2d 459, 462 (S.D.1985) (citing *Bechard v. Union County*, 71 S.D. 558, 27 N.W.2d 591 (1947); *Black v. Unknown Creditors*, 83 S.D. 119, 124, 155 N.W.2d 784, 787 (1968)).

This claim is not a collateral attack on the probate decree. Bollinger is not arguing that her claim should have been honored by the estate. She is pursuing a separate cause of action for reimbursement from the testamentary trust. Therefore, this claim is not an improper collateral attack.

## NONEXISTENT TRUST

The trial court's third ground for partial summary judgment is that the trust was not in existence at the time the farmhouse repairs were made and, consequently, the trust was not unjustly enriched. The trial court ruled that, in order to prevail in an unjust enrichment action, Bollinger had to show she conferred a benefit to the trust, that the

---

**6.** SDCL 30–23–38 provides: "A decree of final distribution is conclusive as to the rights of heirs, legatees, or devisees, subject only to be reversed, set aside, or modified on appeal."

trust acquiesced to that benefit, and that to allow the trust to retain this benefit without compensation would be unjust. *Ringgenberg v. Wilmsmeyer*, 253 N.W.2d 197 (S.D.1977). Of course, in the absence of a trust, none of these elements can be proven.

On appeal, Bollinger argues that Eldredge's acts during the pending probate created a "trust in fact." Bollinger introduced an income tax return which was signed by Eldredge as trustee into evidence. This income tax return was filed prior to the probate court's final decree and was titled for the "Henrietta C. Sandquist Trust". Presumably, Bollinger claims this income tax return in conjunction with Eldredge's actions creates a "trust in fact." Bollinger also cites SDCL 55-1-5 in support of the "trust in fact." SDCL 55-1-5 provides:

An express trust is created as to the trustee by any words or acts of his, indicating with reasonable certainty:

(1) His acceptance of the trust or his acknowledgment, made upon sufficient consideration, of its existence; and

(2) The subject, purpose, and beneficiary thereof.

■ Additionally, this court has held, "*[u]pon the death of the testator* the devisee becomes vested with the same right to, and interest in, the devised property that was possessed by the testator, at the time of his death[.]" *Hicks v. Skie*, 67 S.D. 115, 116, 289 N.W. 507, 508 (1939) (emphasis added). On death of the testator, title to real property devised in a will becomes vested in the devisee subject to control of the county court and possession of executor during administration of the estate. *In re Estate of Kappenmann*, 82 S.D. 91, 141 N.W.2d 780 (1966). "Upon the death of the testator and even before the probate of the will, the general rule is that title to realty vests in the devisee." Page on Wills, § 59.2, p. 378 (1962). Therefore, the trust existed at the time of the repairs because the trust was a devisee of the Sandquist Estate and title to the house vested in the trust upon the death of Henrietta Sandquist.

■ Bollinger's claim for relief rests in the court's equitable powers to imply a contract in law. There are two classes of implied contracts, one is implied in fact and the other in law. Those falling within the second classification are generally referred to as "quasi" or "constructive contracts" and do not arise because of a manifestation of intention to create them, but rest upon equitable principle that a person shall not be permitted to enrich himself unjustly at the expense of another. *Thurston v. Cedric Sanders Co.*, 80 S.D. 426, 125 N.W.2d 496 (1963).

Murray on Contracts states:

The purpose of quasi contracts is to accomplish restitution, i.e., to place the parties in status quo as if no unjust enrichment had occurred. The purpose of true contracts is to fulfill those reasonable expectations which have been induced by the making of a promise. It would be preferable if a wholly different name were adopted for the restitutionary device so that it would be clear that this type of obligation (which is controlled by entirely different principles) has no relationship to contract.

J.E. Murray Jr., *Murray on Contracts* § 9 at 16 (1974).

■ Contracts implied in law are fictions of law adopted to achieve justice where no true contract exists. *Mahan v. Mahan*, 80 S.D. 211, 121 N.W.2d 367 (1963). The trial court correctly held that Bollinger must show she conferred a benefit upon the trust, that the trust or trustee was cognizant of that benefit and that to allow the trust to retain that benefit without reimbursement would unjustly enrich it. *Ringgenberg*, 253 N.W.2d 197. However, the trial court incorrectly concluded the trust could not have been unjustly enriched because it did not exist at the time of the repairs.

■ By precedent, the trust came into existence upon Sandquist's death. *Kappenmann*, 82 S.D. 91, 141 N.W.2d 780. Therefore, genuine issues of fact exist in this case: (1) Did Bollinger confer a benefit to the trust? (2) Was the trust/trustee cognizant of this benefit? (3) Is it inequitable to allow the trust to retain these benefits without paying for them? Since these factual questions are present, we reverse the partial summary judgment and remand to the trial court.

## ISSUE 2

Did the trial court err by refusing to remove Eldredge as trustee of the Henrietta Sandquist Trust?

Bollinger claims the trial court erred by refusing to remove Eldredge as trustee of the testamentary trust. She argues that Eldredge has not performed her duties as trustee because of her status as secondary beneficiary.

■ Bollinger failed to submit proposed findings or objections to Eldredge's proposed findings of fact in a timely manner. As a result, our scope of review is limited. *See* SDCL 15–6–52(a). "The late filing of proposed findings or objections to an opponent's proposed findings limits this court's review on appeal to 'whether the findings of fact support the conclusions of law and judgment.'" *Shoop v. Shoop,* 460 N.W.2d 721, 724 (S.D.1990) (quoting *GMS, Inc. v. Deadwood Social Club, Inc.,* 333 N.W.2d 442, 443 (S.D.1983)); *accord Burke v. Lead–Deadwood Sch. Dist. No. 40–1,* 347 N.W.2d 343 (S.D.1984). "'[T]he facts are considered conclusive and may not be challenged.'" *Shoop* at 724 (quoting *Massey Ferguson Credit Corp. v. Bice,* 450 N.W.2d 435, 444 (S.D. 1990)).

■ The following findings support the trial court's conclusion retaining Eldredge as trustee:

## II.

That the present action involves a testamentary trust created by Henrietta C. Sandquist under a Last Will and Testament executed by Henrietta C. Sandquist on or about November 10, 1975. Under the terms of the Testamentary Trust, the Testatrix's granddaughter, Pearl Eldredge, Defendant herein was named Trustee. The beneficiary during the Plaintiff's lifetime is the Plaintiff, Janice Bollinger. Defendant Trustee, Pearl Eldredge is the daughter of the Plaintiff.

## X.

That pursuant to the Final Decree of Distribution in the matter of the Estate of Henrietta Sandquist, the Henrietta C. Sandquist Trust was created and the property transferred to the Defendant, Pearl Eldredge, as Trustee, to be by her managed, administered, and the principal thereof and the income thereof held and distributed in following manner:

'During the life of Janice Bollinger (Plaintiff herein), (1) the Trustee shall pay to Janice Bollinger in monthly or other convenient installments the net income derived from said Trust. Advances were to be made by the Trustee in her sole discretion as she deems necessary and advisable, (2) the Trustee shall pay to or apply for the benefit of Janice Bollinger from time to time such sums from the principal as the Trustee in her sole discretion deem necessary or advisable, in addition to any other funds known to the Trustee to be available to her for those purposes, to provide for her proper care, support, maintenance and education.'

## XXV.

That the terms of the Testamentary Trust provide for all of the net income to be distributed to the Plaintiff. Defendant has been making distributions of the net income on a monthly installment basis to Plaintiff with any additional accumulations of income being distributed to the Defendant at the end of each year.

## XXVII.

The Defendant as Trustee has taken no action that risks dissipation of the Trust corpus.

## XXVIII.

The only present danger or threat to the corpus of the principal is the admitted view of the Plaintiff that she would rather see the corpus go to lawyers and fees rather than to her children.

Based on these and other findings, the trial court made the following conclusions:

## VII.

That continuation of the Defendant as Trustee of the Henrietta C. Sandquist Trust would be commensurate with the wishes of Henrietta C. Sandquist inasmuch as she selected her granddaughter to serve as Trustee with knowledge of any dispute or conflict between the Plaintiff and the Defendant.

## IX.

The Defendant has done a good job of management of the Trust corpus.

## X.

That the terms of the Testamentary Trust provide for the Defendant as Trustee to invade the principal of the Trust in her sole discretion and where the Testatrix has made a selection of a Trustee the same should not be disturbed absent a demonstrated abuse of power detrimental to the Trust.

## XI.

Based upon the totality of the circumstances, the Defendant has not been demonstrated to have committed any abuse of power detrimental to the Trust and should remain as Trustee.

The trial court's findings of fact support its conclusion that Eldredge should remain trustee. In closing, the trial court's decision retaining Eldredge as trustee is affirmed, but the unjust enrichment claim is reversed and remanded for further proceedings consistent with this opinion.

MILLER, C.J., WUEST, HENDERSON and SABERS, JJ., concur.