Conrad R. TVEDT, Plaintiff
and Appellant,

v.

Gordon BORK, Marjorie Bork, Calvin
Blom, Evelyn Blom, Doc Bork & Sons,
Inc., a South Dakota Corporation, and
Ogle Petroleum, a foreign Corporation,
Defendants and Appellees.

No. 15595.

Supreme Court of South Dakota.

Considered on Briefs May 22, 1987.

Decided Oct. 14, 1987.

Robert A. Sambroak, Jr., Kadoka, for
plaintiff and appellant.

C.D. Kell, Murdo, for defendants and
appellees.

PER CURIAM.

Conrad Tvedt brought an action to quiet
title to his severed mineral interests and to
recover damages for an unauthorized oil
and gas lease made by the surface owners,
Doc Bork & Sons, Inc. (Bork), with lessee,
Ogle Petroleum, Inc. Tvedt and Bork stip-
ulated to the facts and made motions for
summary judgment.[1] The circuit court en-
tered summary judgment partially in favor
of Tvedt declaring that he was entitled to
possession of the mineral rights after July
1, 1985. The court decided, however, that
Bork, as owner of the surface rights, was
entitled to retain the oil and gas lease
payments made by Ogle Petroleum during
the years 1980 through 1984. We reverse
and remand.

---

1. Defendants Ogle Petroleum and the Bloms are     not parties to this appeal.

## FACTS

Lars and Thelma Tvedt, the original owners, sold the property involved in this dispute to Calvin and Evelyn Blom in 1967 retaining for themselves all oil, gas and mineral rights. In 1968 Tvedts conveyed their full mineral rights to their son, Conrad. The mineral deed to Tvedt and the warranty deed to Bloms were recorded that same year. Bloms later sold their property to Bork. In November 1980 Bork leased the oil and gas rights to Ogle Petroleum. The lease provided for a bonus payment to Bork upon execution of the lease, royalty payments for any oil or gas produced, and annual delay rentals on a per acre basis if production did not commence within one year of the lease.[2] There was no evidence that production ever occurred on the property and apparently only the $10 bonus and $2,500 annual delay rentals were paid from 1980 through 1984. In April 1981, Bork recorded an affidavit of possession pursuant to SDCL 43–30–7 and –8.1[3] seeking to merge the severed mineral rights with the surface rights.

In 1984 Tvedt, as owner of the severed mineral interests, recorded an affidavit pursuant to SDCL 43–30–8.1 seeking to preserve his severed mineral interests. The 1985 Legislature repealed SDCL 43–30–8.1 and replaced it with SDCL ch. 43–30A. Therefore, in August of 1985, Tvedt again sought to preserve his mineral interests by recording a "statement of claim" pursuant to SDCL 43–30A–4.[4]

## 1. DID BORK'S AFFIDAVIT VEST THE SEVERED MINERAL RIGHTS IN BORK?

The trial court entered a "finding"[5] that Bork's filing of an affidavit pursuant to

---

**2.** The commentators recognize several types of payments typically made for the purpose of developing oil and gas. A "cash bonus" or "bonus" is usually paid upon execution of a lease apart from any production. "Delay rentals" are usually paid during the term of the lease for extending or delaying drilling operations. "Royalties" are a share of the *actual production* or its proceeds. 1 H. Williams & C. Meyers, *Oil & Gas Law* § 301, 434–437 (1986). Although the parties did not use these terms in their pleadings or briefs, the terms are used in this opinion for purposes of legal clarity and precision.

**3.** The marketable title statutes and severed mineral interest statutes provide in part, SDCL 43–30–7:

For the purpose of this chapter, the fact of possession of real property referred to in § 43–30–1 may be shown of record by one or more affidavits containing the legal description of the real property referred to and show that the record titleholder is upon the date thereof in possession of the real property.... No such affidavits of possession may be filed as to any lands before the expiration of twenty-three years from recording of deed of conveyance or other instrument of conveyance under which title is claimed, or before one year after July 1, 1957, whichever event is the latest in point of time, to any land as to which claim under the provisions of § 43–30–5 has been filed.....

43–30–8.1:

An affidavit filed pursuant to § 43–30–7 shall bar a severed mineral interest in the same property and shall merge such severed mineral interest with the surface estate interest described in the affidavit, unless any person

claiming an interest in such severed mineral interest has previously recorded an instrument describing such severed mineral interest with the appropriate register of deeds. Such recording shall be valid for ten years and may be rerecorded. For the purposes of this section, the term "severed mineral interest" shall mean any property interest in minerals in any lands in this state which interest is owned separately from any fee interest to the surface of the property upon or beneath which the mineral interest exists. The term "severed mineral interest" shall not be deemed to mean or include any oil lease, gas lease or any other mineral lease. The filing of an affidavit by the surface estate owner pursuant to § 43–30–7 or the failure to file an affidavit by the severed mineral interest owner pursuant to this section shall have no effect whatsoever on any such lease which has been duly recorded and is valid and existing at the time such affidavit is filed. The mineral interests owned or held in trust by the state of South Dakota are exempt from the provisions of this section.

In 1985 SDCL 43–30–8.1 was repealed. 1985 S.D.Sess.Laws, ch. 338 § 10.

**4.** See 1985 S.D.Sess.Laws, ch. 338, codified as SDCL ch. 43–30A. This chapter outlines a variety of acts that will prevent a mineral interest from being considered abandoned after it has not been used for 23 years. Filing of a statement of claim is among the acts that establish use of a mineral interest. SDCL 43–30A–2, –3 and –4.

**5.** Findings and conclusions are not required on decisions of motions for summary judgment.

SDCL 43–30–8.1 in 1981 made it the rightful owner of the mineral rights and entitled it to the rentals it received under the lease until the effective date of SDCL ch. 43–40A, or July 1, 1985.

Contrary to the trial court's findings, however, the affidavit filed by Bork pursuant to SDCL 43–30–8.1 in 1981 did not have the effect of vesting Bork with the severed mineral interests. Affidavits of possession filed pursuant to this statute must also satisfy SDCL 43–30–7, which is referred to in section 8.1. According to section –7:

> No such affidavits of possession may be filed as to any lands *before the expiration of twenty-three years from recording of deed of conveyance or other instrument of conveyance under which title is claimed,* ... to any land as to which claim under the provisions of § 43–30–5 has been filed. [emphasis supplied].

Thus, an affidavit of possession is intended to show possession for twenty-three years from the date of recording of the original conveyance. Also SDCL 43–30–8 provides in part that, "[w]hen an affidavit has been filed and recorded *as provided in § 43–30–7* ... [it] shall be prima facie evidence of the facts therein stated, for the purpose of this chapter. [emphasis added]" The obvious purpose of "this chapter" is to provide some evidence of marketable title and not to transfer existing valid interests.

▮ Marketable title acts with provisions similar to South Dakota's protect record title holders from ancient title claims or defects if the record title holder has an unbroken chain of title starting with some "root of title". *See e.g. Presbytery of Southeast Iowa v. Harris,* 226 N.W.2d 232 (Iowa 1975); P. Bayse, *Clearing Land Titles* §§ 171–174, 176, 182 (1970); L. Simes & C. Taylor, *The Improvement of Conveyancing by Legislation* 3–5 (1960); W. Barnett, *Marketable Title Acts—Panacea or Pandemonium,* 53 Cornell L.Q. 45, 52 (1967); R. Poulston, *Legislation, Existing & Proposed, Concerning Marketability of Mineral Titles,* 7 Land & Water L.Rev. 73, 75 (1972); Annotation, *Construction and Effect of "Marketable Record Title" Statutes,* 31 A.L.R.4th 11 (1984).* In the case of mineral interests, their severance creates a separate estate and the "root title" to the mineral interests is the recorded instrument or conveyance severing the minerals. In this case, it was the deed recorded in 1968 that severed the minerals by reserving them for Tvedt's predecessors in title, his parents. *See* SDCL 43–28–17 (defining conveyance); *Northern Pacific Ry. Co. v. Advance Realty Co.,* 78 N.W.2d 705 (N.D.1956). The deed reserving the minerals is then the "deed of conveyance or other instrument of conveyance under which title is claimed [to the mineral interests]," SDCL 43–30–7. The twenty-three years is measured from the date of recording of this conveyance before an affidavit of possession pursuant to sections –7, –8, and –8.1 can take effect. *See Northern Pacific Ry. Co., supra; Sims & Taylor, supra* at 59 (comparing and distinguishing the effect of affidavits of possession, etc., from instruments of conveyance). Even then, prima facie evidence is rebuttable. SDCL 43–30–8. Marketable title acts operate to extinguish ancient title claims and defects, and not to cut off existing interests before the running of the twenty-three year period from "root title". Therefore, Bork's filing of an affidavit pursuant to section –7, but before the running of twenty-three years from the time the minerals were severed in 1968, could not have the effect of cutting off a severed mineral interest and vesting it in Bork. Consequently, the trial court incorrectly concluded that Bork's affidavit of possession vested him with the severed mineral interests.

### 2. DAMAGES FOR WRONGFUL LEASING WITHOUT TRESPASS

▮ Tvedt contends that he was entitled to recover damages from the surface own-

---

SDCL 15–6–52(a). Findings and conclusions are also waived by a stipulation of facts. SDCL 15–6–52(b). Nevertheless, conclusions of law and undisputed findings of fact may be helpful to us in revealing the basis for the trial court's decision, and in this case, focusing the issue of the effect of the affidavits regarding the severed mineral interests. *See* 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2575 (1971).

**14**

er, Bork, for wrongful leasing of the mineral interests. The issue is whether, in the absence of any oil or gas production from a tract, the owner of the severed mineral rights is entitled to recover damages from the owner of the surface rights who executes a lease and is paid a bonus and delay rentals by a lessee.

The authorities cited by Tvedt do not support his argument that he is entitled to recover damages for Bork's "wrongful leasing" of the mineral interests and receipt of bonus payments and delay rentals. *Davis v. Kentland Coal & Coke Co.*, 247 Ky. 642, 57 S.W.2d 542 (1933); *Donovan v. Consolidated Coal Co.*, 187 Ill. 28, 58 N.E. 290 (1900), cited by appellant. *Davis* and *Donovan* merely held that owners of the mineral rights were entitled to recover damages from a lessor and lessee where the sublessees committed actual trespasses by mining coal on the owners' neighboring tracts. In those cases the theory on which the mineral owners recovered was the trespass that occurred by the actual mining of coal and not any theory of a "wrongful leasing" by the surface owner.

The liability for damages of a *trespasser* who removes minerals is clearly established. *See* 1 E. Kuntz, *Oil & Gas* §§ 11.1, 11.2 (1987); 1 W. Summers, *Oil & Gas* § 22 (1954); *Williams & Meyers, supra,* § 226. In this case, however, no oil, gas, or other minerals were extracted and no trespass occurred; Bork merely received a bonus and delay rentals from Ogle. Therefore, Tvedt was not entitled to recover for any trespass.

■ As the true owner of the mineral interests, however, Tvedt was entitled to recover the bonus and delay rentals paid to the surface owner Bork by the developer Ogle Petroleum under a mineral lease between Bork and Ogle. Even in the absence of a lease between the mineral owner and the developer, the mineral owner has the right to bonus and delay rentals.

Although the right to payments under a lease would be described as being incident to the reversion according to conventional real property terminology, the pattern of such payments is sufficiently standarized that it is common for courts to treat the right to such payments as being incident to the full mineral interest whether or not there is an outstanding oil and gas lease at the time. Thus, even before an oil and gas lease has been executed describing the payments to be made under the lease and describing other rights of the lessor, it is recognized that the owner of a full mineral interest has distinct incidents of ownership with respect to future leases, and that he may alienate such incidents or property rights in whole or in part. Such incidents are: (a) the power to lease, (b) the right to receive bonuses, (c) the right to receive delay rentals, and (d) the right to receive royalties.

*Kuntz, supra,* § 15.1, 429, citing *e.g. Anderson v. Mayberry*, 661 P.2d 535 (Okla. App.1983); *Crews v. Burke*, 309 P.2d 291 (Okla.1957).

Because Tvedt owned the full mineral interests, it follows that the incidents of ownership entitled him to receive any payments or delay rentals consistent with his interests in the minerals. In *Anderson, supra* the court held that the owner of a fractional reserved mineral interest, which was non-participating as to bonus and delay rentals, was only entitled to the proceeds of production proportionate with his reserved interests under a lease executed between owners, grantee and lessee. In *Allison v. Allen,* 326 P.2d 1059 (Okla.1958), the court held that even though the mineral owner's interest did not appear of record, the owner was entitled to bonus payments received by the record fee owners under a lease with a developer; the record fee owner became a constructive trustee of the bonus payments received from the developer. In this case, Tvedt was the *actual* and *record* owner of the mineral interests and stood in a better position than the mineral owner in *Allison.* Both *Allison* and *Anderson* confirm the principle that the right to a bonus and delay rentals follow ownership of the minerals. Therefore, Tvedt had an even greater claim to the bonus and rental payments received by the

surface owner, Bork, who was not entitled to them.

In *Allison,* the court also granted the mineral owner an accounting for the bonus payments even though this specific relief was not requested. Because the mineral owner's petition prayed for such relief "as was necessary and proper", the prayer was sufficient to entitle the mineral owner to an accounting for bonuses. Our statute, SDCL 15-6-54(c), provides, "[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." *See also Maresh v. Unverzagt,* 304 N.W.2d 712 (S.D. 1981); *North River Ins. Co. v. Golden Rule Const., Inc.,* 296 N.W.2d 910 (S.D. 1980); *Miller v. Scholten,* 273 N.W.2d 757 (S.D.1979). Even though Tvedt did not request an accounting or a specific recovery for the bonus and delay rentals, he made a specific request for damages and a general request "for such further relief as the court may deem just and equitable." Consequently, he was entitled to recover the bonus and the delay rentals even though they were not specifically requested.

## CONCLUSION

The trial court incorrectly concluded that Bork was entitled to the payments based on the affidavit of possession. However, Tvedt, as the record mineral owner was entitled to both the bonus and the rentals. Therefore, the judgment is reversed and remanded for a determination of the amount Tvedt is entitled to recover.