#29409, #29420-a-MES
**2022 S.D. 43**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

HEALY RANCH, INC.,                                    Plaintiff and Appellant,

    v.

BRET HEALY, Individually and
d/b/a HEALY RANCH PARTNERSHIP,          Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
BRULE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICK T. SMITH
Judge

* * * *

JOE ERICKSON
LEE SCHOENBECK of
Schoenbeck Law Office
Watertown, South Dakota                    Attorneys for plaintiff and
                                       appellant.


ANGIE J. SCHNEIDERMAN of
Moore, Corbett, Heffernan,
  Moeller & Meis, LLP
Sioux City, Iowa                                    Attorneys for defendant and
                                       appellee.

* * * *

ARGUED
MARCH 23, 2021
OPINION FILED **08/03/22**

#29409, #29420

SALTER, Justice

[¶1.]    This case arises under the South Dakota Marketable Title Act (SDMTA) as a quiet title action by Healy Ranch, Inc., (HRI), seeking to defeat a notice of claim filed by Bret Healy to certain real property in Brule County. HRI asserts that doing so will establish for itself marketable record title to the property. In its complaint, HRI also sought costs and attorney fees, alleging that Bret had filed the notice for the purpose of slandering title to the property. Bret filed a counterclaim in which he sought to quiet title to the property in the name of Healy Ranch Partnership (HRP).

[¶2.]    The circuit court granted HRI's motion for summary judgment, voiding Bret's notice of claim, but denied HRI's request for attorney fees. HRI appeals this latter decision, and by notice of review, Bret appeals the circuit court's determination that HRI possesses marketable record title to the property. We affirm, but under a different analysis than the circuit court.

**Facts and Procedural History**

[¶3.]    Bret Healy, along with Bryce Healy and Barry Healy, are the three sons of Robert and Mary Ann Healy. For many years, the family operated a farm and ranch, commonly known as the Healy Ranch (the Ranch), on approximately 1,700 acres of land located in rural Brule County. Prior to 1985, the Ranch was owned by HRP, whose partners included Robert, Mary Ann, and Robert's mother, DeLonde Healy. Robert passed away in 1985, and the parties seem to agree that he left his interest in HRP to Mary Ann, making Mary Ann and DeLonde the two

-1-

remaining partners.[1]  In 1986, Mary Ann, DeLonde, and Bret entered into a new partnership agreement, under which Bret received DeLonde's interest in HRP.

[¶4.]     In 1994, Mary Ann filed articles of incorporation forming HRI.  On March 12, 1995, Mary Ann and DeLonde executed a warranty deed purporting to transfer all of the real property associated with the Ranch to HRI.  The warranty deed listed the grantor as "Healy Ranch, a partnership" and was signed by Mary Ann and DeLonde.  The deed was recorded with the Brule County Register of Deeds on March 13, 1995.

[¶5.]     Over the next several years, Bret and his two brothers purchased shares in HRI and acted as corporate officers.  Bret transacted business as the president of HRI on multiple occasions, including, for example, signing mortgages on HRI's behalf and entering into lease agreements in its name.  Bret also acted in his personal capacity to purchase land from HRI on which he built a home.

[¶6.]     In 2016, Bret and his brothers discussed selling the Ranch.  Bret was initially opposed to any potential sale, and on April 3, 2017, Bret sought advice from an attorney to discuss his options.  According to Bret, these discussions led to his discovery of the 1995 warranty deed signed by Mary Ann and DeLonde transferring the Ranch to HRI.  Bret claimed he did not know about the deed prior to 2017.

[¶7.]     In May 2017, Bret commenced an action naming Mary Ann, his brothers, HRP, HRI, and the Healy family's previous attorney as defendants.  Bret alleged a variety of tort and contract claims, including an assertion that Mary Ann

---

1.     Mary Ann remarried after Robert's death and is now known as Mary Ann Osborne.

fraudulently conveyed the Ranch to HRI using the 1995 warranty deed. Bret theorized that DeLonde and Mary Ann could not transfer title to the property without his consent because the property belonged to HRP, and further, DeLonde no longer had an equity interest in HRP. However, Bret did not attempt to quiet title to the Ranch as part of this initial action.

[¶8.] The circuit court granted summary judgment in favor of the defendants on all of Bret's claims, concluding each of them was untimely. The court also granted the defendants' request for attorney fees, finding Bret's lawsuit was instituted for the purpose of stopping the sale of the Ranch and determining that the claims were not grounded in a belief that they were valid.

[¶9.] Bret appealed, and we affirmed the circuit court's decision that Bret's claims were time barred. *See Healy v. Osborne*, 2019 S.D. 56, ¶ 1, 934 N.W.2d 557, 559. Although Bret's appellate submissions detailed his theory about which entity actually owned the Ranch, we noted in our decision that "Bret did not bring a quiet title action challenging ownership to Healy Ranch" and, therefore, we were not called upon to decide the question. *See id.* ¶ 20 n.2, 934 N.W.2d at 563 n.2.[2] As a consequence, we assiduously "decline[d] to address Bret's claim of ownership because the threshold issue in th[e] case center[ed] on the timeliness of Bret's claims . . . ." *Id.* ¶ 21, 934 N.W.2d at 563. We also affirmed the circuit court's award of attorney fees. *Id.* ¶ 37, 934 N.W.2d at 567.

---

2.      In his reply brief in the *Healy v. Osborne* appeal, Bret attempted unsuccessfully to argue that his "general prayer for relief" was sufficient for him to belatedly assert a quiet title action.

[¶10.]     On January 5, 2018, during the pendency of his appeal in *Healy v. Osborne*, Bret prepared and recorded a notice of claim of interest stating that HRP held an interest in the Ranch. The notice of claim cites SDCL 43-30-5, which, as explained below, is part of a procedure for noting adverse claims to real estate under the SDMTA. Listed specifically in the notice of claim were each of the parcels that constitute the Ranch—the same property that was at the heart of Bret's principal claims in *Healy v. Osborne*.

[¶11.]     After the issuance of our decision in *Healy v. Osborne*, HRI commenced this action, naming as defendants "Bret Healy, individually, and d/b/a Healy Ranch Partnership." The complaint was captioned as a quiet title action; however, it did not reference South Dakota's quiet title statutes. *See* SDCL ch. 21-41 (governing quiet title actions). Instead, the complaint sought to establish "marketable title" under the SDMTA and void Bret's notice of claim. In HRI's view, Bret had not filed his notice of claim within what it believes was the governing twenty-two-year statutory period. The complaint also requested costs and attorney fees, claiming Bret filed the notice of claim for the sole purpose of slandering HRI's title. *See* SDCL 43-30-9 (allowing for costs and attorney fees if the notice is filed "for the purpose only of slandering title").

[¶12.]     In his answer, Bret claimed HRI had misinterpreted the SDMTA, and alleged that he had timely filed the notice of claim within what he asserts is the correct statutory period of twenty-three years, rather than twenty-two. In a counterclaim, Bret asked to quiet title to the Ranch in HRP, asserting it owned the Ranch based on two deeds—one recorded in 1968 and another recorded in 1990.

HRI's reply to the counterclaim included a number of affirmative defenses, including the claim that Bret was barred from asserting a quiet title action under the doctrine of res judicata.

[¶13.]     HRI moved for summary judgment. Bret resisted the motion and also moved to dismiss the complaint or join HRP, operating under the belief that HRP was not a party. In Bret's view, HRP was an indispensable party under the provisions of SDCL 15-6-19(a), and he argued HRI's complaint should be dismissed if HRP was not joined in the action.

[¶14.]     The circuit court did not reach the question of joinder and granted HRI's motion for summary judgment, concluding that Bret's notice of claim was not timely under the SDMTA. In its oral decision issued at the conclusion of the hearing on the parties' motions, the court determined that Bret's notice of claim was time barred under SDCL 43-30-3 because more than twenty-three years had passed from the 1990 deed under which Bret based HRP's claim of ownership.

[¶15.]     At a subsequent hearing, the circuit court denied HRI's request for costs and attorney fees under SDCL 43-30-9. The court concluded "there has not been a showing to the [c]ourt's satisfaction that this was done for the purpose of slandering title[.]" In so doing, the court rejected HRI's claim that the previous award of attorney fees by the circuit court in *Healy v. Osborne* conclusively established Bret's claim that HRP owned the Ranch was frivolous and malicious, demonstrating, in HRI's view, that Bret's notice of claim could only have been filed for the purpose of slandering title to the Ranch.

[¶16.]     HRI appeals the circuit court's denial of costs and attorney fees. Bret has sought review of the court's decision to grant HRI's motion for summary judgment based on its determination that the notice of claim was untimely. We address this latter issue first.

## Standard of Review

[¶17.]     "We review a circuit court's entry of summary judgment under the de novo standard of review." *Estate of Stoebner v. Huether*, 2019 S.D. 58, ¶ 16, 935 N.W.2d 262, 266 (citation omitted). The principles we apply in this regard are well-settled:

> [W]e must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the non-moving party and reasonable doubts should be resolved against the moving party. The non-moving party, however, must present specific facts which demonstrate a genuine, material issue for trial. When no genuine issue of fact exists, summary judgment is looked upon with favor and is particularly adaptable to expose sham claims and defenses. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of a trial court, affirmance of a summary judgment is proper.

*Du-Al Mfg. Co., a Div. of SOS Consol., Inc. v. Sioux Falls Const. Co.*, 487 N.W.2d 29, 31 (S.D. 1992) (citation omitted).

[¶18.]     Our review of statutory text is also a question of law reviewed de novo. *See Estate of Henderson v. Estate of Henderson*, 2012 S.D. 80, ¶ 9, 823 N.W.2d 363, 366.

**Analysis and Decision**

*South Dakota Marketable Title Act*

[¶19.]         The SDMTA, found at SDCL chapter 43-30, reflects a legislative effort to provide a measure of certainty as to the ownership of real property by extinguishing stale claims and confirming the settled expectations created by prolonged periods of record ownership and possession. *See* 3 Patton & Palomar on Land Titles § 563 (3d ed.) ("The idea behind marketable title acts is that when one person has had a record title to land for a significant period of time, old claims or interests that are inconsistent should be extinguished."). The "purpose of [the] SDMTA is to simplify and facilitate land title transactions by allowing persons to deal with the record owner." *Springer v. Cahoy*, 2013 S.D. 86, ¶ 11, 841 N.W.2d 15, 19 (cleaned up) (quoting SDCL 43-30-10). "Collectively, [the] SDMTA functions as a curative act, a recording act, and as a statute of limitations." *Id.*[3]

[¶20.]         At its outset, the SDMTA describes the features and limitations of marketable record title in the following terms:

> Any person having the legal capacity to own land in this state, who has an unbroken chain of title to any interest in land by himself and his immediate or remote grantors for a period of twenty-two years or longer, and is in possession of such land, shall be deemed to have a marketable record title to such interest, subject only to such claims thereto and defects of title as are not extinguished or barred by the application of the provisions of this chapter, instruments which have been

---

3.     Though the statute of limitations reference is not directly implicated in this appeal, the description of the SDMTA as a "statute of limitations" in *Springer* may be more generic than technically correct. But we are not called upon here to consider whether the SDMTA functions as a true limitation period or statute of repose. *See Pitt-Hart v. Sanford USD Med. Ctr.*, 2016 S.D. 33, ¶ 21, 878 N.W.2d 406, 414 (distinguishing statutes of limitation and repose).

recorded less than twenty-two years, and any encumbrances of record not barred by the statute of limitations.

SDCL 43-30-1.

[¶21.] As is relevant here, an "unbroken chain of title" exists when "the official public records of the county wherein such land is situated disclose a conveyance . . . twenty-two years or more prior thereto, which . . . purports to create such interest in such person or his immediate or remote grantors, with nothing appearing of record purporting to divest such person and his immediate or remote grantors of such purported interest." SDCL 43-30-2.

[¶22.] To determine whether a party has an "unbroken chain of title" it may be necessary, as SDCL 43-30-2 seems to suggest, to look beyond the date of the party's own recorded title to the "root of title" under which that party claims ownership. *See Tvedt v. Bork*, 414 N.W.2d 11, 13 (S.D. 1987) ("Marketable title acts with provisions similar to South Dakota's protect record title holders from ancient title claims or defects if the record title holder has an unbroken chain of title starting with some 'root of title.'" (citation omitted)).[4]

[¶23.] The text of SDCL 43-30-7 allows a record titleholder to establish possession of the property by recording "one or more affidavits containing the legal description of the real property referred to . . . show[ing] that the record titleholder

---

4.    As defined in the Uniform Marketable Title Act itself, root of title means "a conveyance or other title transaction, whether or not it is a nullity, in the record chain of title of a person, purporting to create or containing language sufficient to transfer the interest claimed by that person, *upon which that person relies as a basis for marketability of title*, and which was the most recent to be recorded as of a date 30 years before the time marketability is being determined." Unif. Marketable Title Act (UMTA) § 5:3 (3d ed.) (emphasis added).

is upon the date thereof in possession of the real property." However, the statute also provides that "[n]o such affidavits of possession may be filed as to any lands before the expiration of twenty-three years from recording of deed of conveyance or other instrument of conveyance under which title is claimed . . . to any land as to which claim under the provisions of § 43-30-5 has been filed." SDCL 43-30-7.

[¶24.] Simplified, these sections function as the "curative" portion of the SDMTA. Aside from the different purpose and implications of SDCL 43-30-7's twenty-three-year period, which are discussed below, these curative provisions count backward in time over the preceding twenty-two years.[5] If this inquiry reveals an unbroken chain of title in the person seeking a declaration of marketability for at least twenty-two years—either directly or through the root of title—the titleholder possesses marketable record title.

[¶25.] In this regard, the SDMTA is essentially self-executing and operates to extinguish any claims or title defects that existed prior to the recordation of the possessor's unbroken chain of title so long as twenty-two years have passed since that date. But the SDMTA does not describe marketable record title in strict, absolute terms. Rather, the text of SDCL 43-30-1 expressly states that marketable record title is "*subject only to such claims thereto and defects of title as are not extinguished or barred by the application of the provisions of this chapter,*

---

5. Because an opinion as to marketable record title will often be rendered in the context of a title examination, the date on which the twenty-two-year period begins could vary depending on the circumstances, e.g., the date on which a title examination is conducted.

instruments which have been recorded less than twenty-two years, and any encumbrances not barred by the statute of limitations." (Emphasis added.)

[¶26.] The reference to "claims . . . and defects of title as are not extinguished or barred" by "this chapter" corresponds with SDCL 43-30-3 whose cumbersome text provides as follows:

> Such marketable title shall be held by such person and shall be taken by his successors in interest free and clear of all interest, claims, and charges whatever, the existence of which depends in whole or in part upon any act, transaction, event, or omission that occurred twenty-two years or more prior thereto, whether such claim or charge be evidenced by a recorded instrument or otherwise, and all such interest, claims, and charges affecting such interest in real property shall be barred and not enforceable at law or equity, unless any person making such claim or asserting such interest or charge shall, *on or before twenty-three years* from the date of recording of deed of conveyance under which title is claimed, or on or before July 1, 1958, whichever event is the latest in point of time, file for record a notice in writing, duly verified by oath, setting forth the nature of his claim, interest, or charge; and no disability nor lack of knowledge of any kind on the part of anyone shall operate to extend his time for filing such claim after the expiration of twenty-three years from the recording of such deed of conveyance or one year after July 1, 1957, whichever event is the latest in point of time.

(Emphasis added.)

[¶27.] The principal issue in this appeal is which conveyance, or rather which "deed of conveyance," marks the date on which the twenty-three-year claim period begins to run. According to Bret, SDCL 43-30-3's use of the phrase "twenty-three years from the date of recording of deed of conveyance under which title is claimed" refers to HRI's deed, recorded March 13, 1995. Under this theory, Bret's notice of claim, recorded January 5, 2018, was filed two months and eight days before the expiration of the twenty-three-year period (March 13, 2018).

[¶28.]    HRI interprets the language of SDCL 43-30-3 differently, claiming the twenty-three-year period should commence on the date of the conveyance forming the basis for *HRP's* ownership claim—i.e., the 1990 deed.  In its view, the period for noticing an adverse claim of ownership relating to the Ranch would have expired in 2013.  The circuit court agreed and concluded that Bret's notice was untimely.  However, we believe this interpretation was erroneous.

[¶29.]    We first state some central, and familiar, rules of statutory construction.  "When interpreting the statutory language of [the] SDMTA, 'we begin with the plain language and structure of the statute.'"  *Springer*, 2013 S.D. 86, ¶ 12, 841 N.W.2d at 19 (quoting *Magellan Pipeline Co., LP v. S.D. Dep't of Revenue & Regul.*, 2013 S.D. 68, ¶ 9, 837 N.W.2d 402, 404).  "When the language in a statute is clear, certain, and unambiguous, there is no reason for construction, and this Court's only function is to declare the meaning of the statute as clearly expressed."  *Id.* (citation omitted).

[¶30.]    Though it lacks literary elegance, SDCL 43-30-3 is not ambiguous.[6]  Navigating the prolixity of the statute leads to the conclusion that a person who has satisfied the provisions of SDCL 43-30-1 possesses marketable record title "free and clear of all interest, claims, and charges . . . *unless* any person making [a] claim or asserting [an] interest or charge shall, on or before *twenty-three years from the date of recording of deed of conveyance under which title is claimed* . . . file for record a notice[.]"  SDCL 43-30-3 (emphasis added).

---

6.    "Ambiguity exists when something is capable of being understood by reasonably well-informed persons in either of two or more senses."  *Kling v. Stern*, 2007 S.D. 51, ¶ 6, 733 N.W.2d 615, 617 (cleaned up).

[¶31.]     The twenty-three-year period for adverse claims counts forward in time "from the date of recording of deed of conveyance under which title is claimed" and bars any claim that is not timely noticed. *Id.* These claims are described in a particular way throughout SDCL 43-30-3 as "such interest" and also as "claims" and "charges." *See also* SDCL 43-30-5 (stating that "[t]he claim referred to in §§ 43-30-3 and 43-30-4 . . . must set forth the legal description of the land affected by such claim together with a statement of the nature of the claim, charge, or interest asserted"). And because marketable record title is viewed from the perspective of the party asserting it, "the deed of conveyance under which title is claimed" can only mean the deed that is the source of the marketable record title claim that is at issue. A contrary interpretation is inconsistent with a careful reading of the text, and it also overlooks the purpose of the SDMTA and the other provisions directly related to SDCL 43-30-3.

[¶32.]     For instance, SDCL 43-30-7, set out above, prevents the record titleholder from filing an affidavit of possession "before the expiration of twenty-three years from recording of deed of conveyance or other instrument of conveyance under which title is claimed . . . to any land as to which claim under the provisions of § 43-30-5 has been filed." There seems to be no question that the "deed of conveyance . . . under which title is claimed" in the text of SDCL 43-30-7 refers to the deed held by the party seeking to establish marketable record title.

[¶33.]     Even within the text of SDCL 43-30-3 itself, the Legislature described claims that are contrary to the assertion of marketable record title with such breadth that they cannot be read, as HRI argues, to fit within the narrow "deed of

conveyance . . . under which title is claimed" phrase at issue here. Indeed, the contrary interests, claims, and charges, which are barred in the absence of a notice within a twenty-three-year period, need not be deeds at all. These claims are, instead, broadly described as "all such interest, claims, and charges affecting such interest in real property[,]" and they can be "evidenced by a recorded instrument *or otherwise*." SDCL 43-30-3 (emphasis added). This collection of potentially unrecorded claims simply cannot be the "deed of conveyance . . . under which title is claimed" that commences the twenty-three-year period. *Id.*

[¶34.]        In the end, any apparent incongruity or confusion related to the twenty-two and twenty-three-year periods can be resolved by focusing less on the different lengths of time and more on the discrete purpose of each. The twenty-two-year period is best understood as a record ownership and possession period, which leads to marketable record title that is, nevertheless, still subject to claims that "are not extinguished or barred by the application of this chapter[.]" SDCL 43-30-1. Though the SDMTA's use of periods of unequal length for ownership and possession and for challenging marketable record title may well be atypical among the other states that have enacted marketable record title acts,[7] it does not detract from the certainty of the statutes at issue here.[8]

---

7.      Some states have enacted marketable title acts that simply provide that a record title holder has marketable record title after a specific period of time free and clear of claims without allowing a different statutory period for claims. *See, e.g.*, Ohio Rev. Code Ann. § 5301.47 (defining marketable title as "a title of record . . . which operates to extinguish such interests and claims, existing prior to the effective date of the root title"); Wyo. Stat. Ann. § 34-10-101 (providing the same definition). Other states have separate ownership periods and limitations periods for claims, but the length of time is the same

(continued . . .)

[¶35.]     Applying our interpretation of SDCL 43-30-3 to the facts of this case, we conclude that Bret timely recorded his notice of claim. Using the date on which HRI's complaint was filed (November 26, 2019) as the beginning point to determine the length of possession and marketable record title, the minimum twenty-two-year period under SDCL 43-30-1 would extend back in time to November 26, 1997. There is no dispute that HRI both possessed and held record title to the Ranch on that date and has since. However, HRI's record marketable title is subject to, among other things, "claims . . . and defects of title . . . not extinguished or barred

_____

(. . . continued)

for each. *See, e.g.*, Kan. Stat. Ann. § 58-3406 (describing the time limit to submit a claim as "during the twenty-five-year period immediately following the effective date of the root of title of the person whose record title would otherwise be marketable"); Utah Code Ann. §§ 57-9-1, -2 (providing the same 40-year period for both unbroken chain of title necessary for marketable title and the statute of limitations for submitting a claim).

8.     Though it is not necessary to our analysis, a review of the SDMTA's legislative history may provide a potential explanation for the different time periods. The first version of the SDMTA was enacted during the 1947 legislative session. It initially provided that the period of record ownership and possession extended back to "the first day of January, 1920[,]" from what appears to have been the effective date of July 1, 1947. *See* 1947 S.D. Sess. Laws ch. 233, § 1; *see also* SDCL § 2-14-16 (stating that "an act of the Legislature which does not prescribe when it shall take effect, if passed at a regular session, takes effect on the first day of July after its passage"). However, the Legislature selected a statutory notice period for adverse claims that ran until "July 1, 1948[,]" providing a would-be claimant with an additional year in which to file a notice of claim. *See* 1947 S.D. Sess. Laws ch. 233, § 3. Given this, it is possible that the Legislature extended the statutory period for noticing claims one year beyond the possession and record title period to avoid the harsh effects the SDMTA would have otherwise created if it barred potentially valid, but unnoticed, claims on the first day the statute became effective. The Legislature maintained the one-year variance in its 1951 amendments and again in 1957 when it changed the operative portions of what was eventually recodified as SDCL 43-30-3 to their present form. *See* 1951 S.D. Sess. Laws ch. 256, §§ 1, 3.

by . . . this chapter[,]" which would include the claim-stripping provisions of SDCL 43-30-3.

[¶36.]     We must, therefore, look to the root of HRI's unbroken chain of record title, the March 13, 1995 deed, and count *forward* twenty-three years to determine the date on which any remaining claims would be barred if not timely noticed. *See* SDCL 43-30-3. That date is March 13, 2018, meaning Bret's January 5, 2018 notice of claim was timely and not barred by the provisions of SDCL 43-30-3. *See Tvedt*, 414 N.W.2d at 13 ("Marketable title acts operate to extinguish ancient title claims and defects, and not to cut off existing interests before the running of the twenty-three year period from 'root title.'" (citation omitted)).

[¶37.]     The fact that Bret's notice of claim was timely, however, does not assure success on the merits of his claim regarding HRP's ownership of the Ranch. For this determination, we must consider not only the nature of the claims Bret presented in *Healy v. Osborne*, but more importantly, the claims he could have presented but did not.

### *Quiet Title and Res Judicata*

[¶38.]     Actions to quiet title to real property are governed by SDCL chapter 21-41. "[A] quiet title action permits an individual who has an estate or interest in real property, whether in or out of possession of the property and whether such property is vacant or occupied, to test the validity of any adverse claims of ownership of the real property for the purpose of quieting title to the real property." *Estate of Henderson*, 2012 S.D. 80, ¶ 13, 823 N.W.2d at 367 (cleaned up) (quoting SDCL 21-41-1).

[¶39.]    Here, HRI invokes the doctrine of res judicata and asserts that Bret's counterclaim seeking to quiet title in HRP is precluded by our decision in *Healy v. Osborne*. Specifically, HRI claims that Bret's argument that HRP owns the Ranch should be foreclosed by issue preclusion and argues that our decision affirming the circuit court's award of attorney fees in *Healy v. Osborne* should prevent Bret from "relitigating the same alleged ownership interest that this Court affirmed as frivolous and malicious." Bret responds by asserting that the elements of issue preclusion are not met and, therefore, the doctrine cannot be invoked to prevent him from litigating his claim to quiet title. Because the application of res judicata prevents Bret from asserting a quiet title action, we begin there.

[¶40.]    "Res judicata consists of two preclusion concepts: issue preclusion and claim preclusion." *Am. Family Ins. Grp. v. Robnik*, 2010 S.D. 69, ¶ 15, 787 N.W.2d 768, 774 (citation omitted). We have previously defined these two concepts in the following terms:

> Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit[.]

*Id.* (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1, 104 S. Ct. 892, 894 n.1, 79 L. Ed. 2d 56 (1984)).

[¶41.]    The difference between issue and claim preclusion is largely "one of degree and emphasis[.]" 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4402 (3d ed. 2021) (Wright & Miller). However, "claim preclusion[ ] is

broader than the issue preclusion function of collateral estoppel." *Merchants State Bank v. Light*, 458 N.W.2d 792, 794 (S.D. 1990).  For example, claim preclusion "precludes relitigation of a claim . . . actually litigated *or which could have been properly raised.*" *Nelson v. Hawkeye Sec. Ins. Co.*, 369 N.W.2d 379, 381 (S.D. 1985) (emphasis added) (citation omitted).  But issue preclusion "prevents relitigation *only of issues actually litigated* in a prior proceeding." *Id.* (emphasis added).  What is prohibited, then, under claim preclusion is the cause of action itself, but under issue preclusion, it "is the particular issue or fact common to both actions." *Bollinger v. Eldredge*, 524 N.W.2d 118, 122 (S.D. 1994) (quoting *Golden v. Oahe Enters., Inc.*, 90 S.D. 263, 275, 240 N.W.2d 102, 109 (S.D. 1976)).

[¶42.]     Res judicata arguments are analyzed under a well-established four-part test:

> (1) the issue in the prior adjudication must be identical to the present issue, (2) there must have been a final judgment on the merits in the previous case, (3) the parties in the two actions must be the same or in privity, and (4) there must have been a full and fair opportunity to litigate the issues in the prior adjudication.

*Dakota, Minn. & E. R.R. Corp. v. Acuity*, 2006 S.D. 72, ¶ 17, 720 N.W.2d 655, 661; *see also Lippold v. Meade Cnty. Bd. of Comm'rs*, 2018 S.D. 7, ¶ 28, 906 N.W.2d 917, 925, as modified on denial of reh'g (Mar. 13, 2018).

[¶43.]     We have frequently applied these elements to res judicata arguments under both issue preclusion and claim preclusion theories.  *See, e.g., Estes v. Millea*, 464 N.W.2d 616, 618 (S.D. 1990) (applying the elements to invoke issue preclusion); *Black Hills Novelty Co., Inc. v. S.D. Comm'n on Gaming*, 520 N.W.2d 70, 73 (S.D. 1994) (same); *Springer v. Black*, 520 N.W.2d 77, 79 (S.D. 1994) (same); *Grand State*

*Prop., Inc. v. Woods, Fuller, Shultz, & Smith, P.C.*, 1996 S.D. 139, ¶ 12, 556 N.W.2d 84, 87 (same); *Frigaard v. Seffens*, 1999 S.D. 123, ¶ 8, 599 N.W.2d 646, 648 (applying the elements to invoke claim preclusion); *Acuity*, 2006 S.D. 72, ¶ 17, 720 N.W.2d at 661 (same); *Farmer v. S.D. Dep't of Revenue & Regul.*, 2010 S.D. 35, ¶ 9, 781 N.W.2d 655, 659 (same); *see also SDDS, Inc. v. State*, 1997 S.D. 114, ¶ 16, 569 N.W.2d 289, 295 (noting that "[w]e apply the same principles" to claim and issue preclusion).

[¶44.] However, as it relates to claim preclusion, we have generally not required exacting "issue-identity" with the earlier action. We have held, instead, that "our review is *not* restricted to whether the specific question posed by the parties in both actions was the same or whether the legal question posed by the nature of the suit was the same." *Farmer*, 2010 S.D. 35, ¶ 10, 781 N.W.2d at 660 (emphasis added). Rather, when analyzing the application of claim preclusion we look to whether the second action "attempt[s] to relitigate a prior determined *cause of action*[.]" *Bank of Hoven v. Rausch*, 449 N.W.2d 263, 266 (S.D. 1989) (emphasis added).[9]

---

9. A "cause of action" may also be referred to as a "claim." *See, e.g., Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594, 206 L. Ed. 2d 893 (2020) ("If a later suit advances *the same claim* as an earlier suit between the same parties, the earlier suit's judgment prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." (emphasis added) (cleaned up)). The use of these particular terms varies by jurisdiction, but they describe the same concept. *See* Wright & Miller § 4406 (3d ed. 2021) ("Three different labels are used to describe the precluded area: 'claim,' 'demand,' and 'cause of action.'").

[¶45.]     "For purposes of [claim preclusion], a cause of action is comprised of the facts which give rise to, or establish, the right a party seeks to enforce. The test is a query into whether the wrong sought to be redressed is the same in both actions." *Glover v. Krambeck*, 2007 S.D. 11, ¶ 18, 727 N.W.2d 801, 805 (cleaned up). "If the claims arose out of a single act or dispute and one claim has been brought to a final judgment, then all other claims arising out of that same act or dispute are barred." *Farmer*, 2010 S.D. 35, ¶ 10, 781 N.W.2d at 660.

[¶46.]     Here, we agree with Bret's assertion that our decision in *Healy v. Osborne* cannot be used to invoke issue preclusion in this case. The question decided in *Healy v. Osborne* was whether Bret's claims against his family and former attorney were time-barred. As indicated above, we did not determine the question at issue in this quiet title action, which relates to ownership of the Ranch. *See Healy*, 2019 S.D. 56, ¶ 21, 934 N.W.2d at 563 ("We decline to address Bret's claim of ownership[.]").

[¶47.]     Nor did we effectively decide the ownership question in our analysis of the attorney fees issue when we stated that "Bret filed the lawsuit for the purpose of preventing the sale of the property, not because he believed his partnership interest remained enforceable." *Id.* ¶ 37, 934 N.W.2d at 567. This passage was simply, as it states, a comment on the unlikely nature of Bret's untimely effort to assert his *partnership interest* which, in any event, implicated personal property rights—not real property rights. *See* SDCL 48-7A-502 (stating that an interest in a partnership is "personal property").

[¶48.]    Consequently, we affirmed the circuit court's attorney fees award because Bret lacked "a reasonable basis to believe his claims were valid when he filed the lawsuit or that they could survive the statute of limitations defenses." *Healy*, 2019 S.D. 56, ¶ 37, 934 N.W.2d at 567. To accept HRI's issue preclusion argument that *Healy v. Osborne* resolved the question of ownership would rewrite portions of our opinion.

[¶49.]    Notwithstanding this, we do believe the doctrine of res judicata applies here, but in a different way that implicates the broader concept of claim preclusion. In our view, Bret's quiet title counterclaim in this case is an overt effort to litigate the same *cause of action* that he litigated in *Healy v. Osborne*.[10] Although the specific legal theories advanced in the two cases are different, of course, Bret is again addressing the same wrong he identified in *Healy v. Osborne*—the alleged wrongful conduct by members of his family to vest HRI with ownership of the Ranch. The underlying facts are the same, as is Bret's principal argument that HRI does not truly own the Ranch.

[¶50.]    In *Healy v. Osborne*, Bret claimed that members of his family and the family's attorney had perpetrated various acts of fraud and other torts against him,

---

10.    While HRI has not specifically argued for an application of claim preclusion, the difference between the concepts is one of degree, *see supra* ¶ 41, and "[i]t can be appropriate in special circumstances for a court to address a preclusion argument sua sponte." *Herrera v. Wyoming*, 139 S. Ct. 1686, 1701 n.5, 203 L. Ed. 2d 846 (2019). A court's decision to apply claim preclusion sua sponte in cases such as this "is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." *Arizona v. California*, 530 U.S. 392, 412, 120 S. Ct. 2304, 2318, 147 L. Ed. 2d 374 (2000) (citation omitted).

which "financially damaged [Bret] . . . and deprived [him] of control over the family ranch." 2019 S.D. 56, ¶ 1, 934 N.W.2d at 559. Bret knew of the existence of the 1995 deed at the time of the 2017 litigation and used it as a basis to assert fraud against the defendants. Bret was also keenly aware that HRI claimed ownership of the Ranch via the 1995 deed and that any interest HRP might have had in the Ranch was at risk. And Bret described the sequence of events that formed the basis for his theory that HRP owned the Ranch.[11] *See supra* footnote 2. Under the circumstances, the first element of claim preclusion is met. *See Finstad v. Beresford Bancorporation, Inc.*, 831 F.3d 1009, 1014 (8th Cir. 2016) (holding a party was barred under the doctrine of claim preclusion from pursuing breach of contract and conversion claims in a second suit after an unsuccessful initial attempt to quiet title to the property because the two suits arose out of the same cause of action).

[¶51.] We also conclude that our decision in *Healy v. Osborne* represented a final judgment on the merits, which we have defined as "one . . . based on legal rights rather than matters of procedure and jurisdiction." *Nelson*, 369 N.W.2d at 381; *cf. Springer*, 520 N.W.2d at 80 ("[W]here the dismissal of the prior action was based on lack of subject matter jurisdiction, such dismissal cannot operate as a final adjudication on the merits."). Though we have not confronted the issue before, there is persuasive authority from the United States Supreme Court and several

___

11.    The fact that Bret did not bring an alternate claim to quiet title in *Healy v. Osborne* is not an impediment to claim preclusion because it would have been appropriate for him to do so then, rather than later through piecemeal litigation. *See* SDCL 15-6-8(a) (authorizing a party to seek "alternative" relief); SDCL 15-6-8(e) (same).

federal courts of appeals, holding that a decision granting summary judgment on the basis of a statute of limitations defense is very much a decision on the merits.[12]

[¶52.] Indeed, as the Supreme Court has observed, "over the years the meaning of the term 'judgment on the merits' has gradually undergone change . . . ." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 502, 121 S. Ct. 1021, 1025, 149 L. Ed. 2d 32 (2001) (internal quotation marks omitted) (citation omitted). For purposes of res judicata, the term "has come to be applied to some judgments . . . that do *not* pass upon the substantive merits of a claim . . . ." *Id.*

[¶53.] Our decision in *Healy v. Osborne* determined that Bret's legal rights were no longer enforceable and that the various defendants faced no liability under the claims asserted. Though the decision may not have examined the substantive merits of the various claims, it was nonetheless a final judgement on the merits

---

12. *See, e.g.*, *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228, 115 S. Ct. 1447, 1457, 131 L. Ed. 2d 328 (1995) ("The rules of finality . . . treat a dismissal on statute-of-limitations grounds . . . as a judgment on the merits."); *Ortiz-Cameron v. Drug Enf't Admin.*, 139 F.3d 4, 6 (1st Cir. 1998) ("[T]he dismissal of a claim as time-barred by the statute of limitations constitutes a judgment on the merits, entitled to preclusive effect." (cleaned up)); *Mathis v. Laird*, 457 F.2d 926, 927 (5th Cir. 1972) ("A ruling based on the statute of limitations is a decision on the merits for *res judicata* purposes."); *Nathan v. Rowan*, 651 F.2d 1223, 1226 (6th Cir. 1981) ("A summary judgment on the basis of the defense of the statute of limitations is a judgment on the merits."); *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996) ("A decision by a federal court that a statute of limitations . . . bars an action is a decision on the merits for purposes of claim preclusion."); *Rick v. Wyeth, Inc.*, 662 F.3d 1067, 1072 (8th Cir. 2011) (applying New York law to determine that a claim dismissed as time-barred was a decision on the merits); *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003) ("[A] dismissal on statute of limitations grounds is a judgment on the merits."); *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006) ("For purposes of res judicata, the rules of finality treat a dismissal on statute-of-limitations grounds as a judgment on the merits." (cleaned up)).

entitled to preclusive effect because it settled the rights and obligations of the respective parties. *See Am. Nat. Bank & Tr. Co. v. City of Chicago*, 826 F.2d 1547, 1553 (7th Cir. 1987) ("A decision may be 'on the merits' for purposes of preclusion even though the court did not resolve the merits."); *see also United States v. Or. Lumber Co.*, 260 U.S. 290, 300–01, 43 S. Ct. 100, 103, 67 L. Ed. 261 (1922) ("Whether based on a plea of the statute of limitations or on a failure to prove substantive allegations of fact, therefore, the result of the judgment is the same, . . . that plaintiff has no case[.]").[13]

[¶54.] Bret does not dispute that the third element is met, conceding in his brief that "the parties present in this cause of action were also involved in the 2017 action." However, Bret uses the discussion on element three to restate his claim that the circuit court erred when it did not require joinder of HRP under SDCL 15-6-19(a). We think the argument is factually unsustainable because HRP appears to be a party here.

[¶55.] Throughout this entire action, Bret has claimed to represent HRP in its effort to quiet title, and we are inclined to take him at his word. HRI's complaint named "Bret Healy, Individually and d/b/a/ Healy Ranch Partnership[,]" and the answer was made on behalf of "Co-Defendants Bret Healy and Healy Ranch

---

13. There should be no question that the doctrine of res judicata would prevent Bret from pursuing the same theories of fraud, negligence, or breach of contract that he asserted in *Healy v. Osborne* as part of a second state court action. Our earlier holding that these claims were time-barred does not make our decision any less "on the merits" than if we had analyzed Bret's legal claims. *See Murray v. Mansheim*, 2010 S.D. 18, ¶ 21, 779 N.W.2d 379, 389 ("[I]n South Dakota, statutes of limitation are not mere technicalities . . . and should not be regarded with disfavor." (citation omitted)).

Partnership." In addition, the counterclaim describes "Bret Healy and Healy Ranch Partnership" as "Counterclaim Co-Plaintiffs" and specifically asks "[f]or an Order determining that Healy Ranch Partnership has legal and marketable title in the [Ranch] Property." Under the circumstances, there is no need to join HRP as a party because it already *is* a party.

[¶56.] Finally, Bret was given a full and fair opportunity to litigate his quiet title action in the 2017 proceedings. "For a claim to be barred by res judicata, the claim need not have been actually litigated at an earlier time. Rather, the parties only need to have been provided 'a fair opportunity to place their claims in the prior litigation.'" *Farmer*, 2010 S.D. 35, ¶ 9, 781 N.W.2d at 659 (quoting *Mack v. Trautner*, 2009 S.D. 13, ¶ 15, 763 N.W.2d 121, 124).

[¶57.] We noted explicitly in *Healy v. Osborne* that "Bret did not bring a quiet title action challenging ownership to Healy Ranch." 2019 S.D. 56, ¶ 20 n.2, 934 N.W.2d at 563 n.2. However, as indicated above, he had every opportunity to do so. Perhaps sensing the omission, Bret belatedly argued in his *Healy v. Osborne* reply brief that he had asserted a sort of implicit quiet title claim, but to no avail. *See Ellingson v. Ammann*, 2013 S.D. 32, ¶ 10, 830 N.W.2d 99, 102 ("A party may not raise an issue for the first time on appeal, especially in a reply brief when the other party does not have the opportunity to answer." (citation omitted)). Therefore, element four is met.

[¶58.] "Res judicata is premised upon two maxims: a person should not be twice vexed for the same cause and public policy is best served when litigation has a repose." *Rausch*, 449 N.W.2d at 266. "One major function of claim preclusion is to

force a plaintiff to explore all the facts, develop all the theories, and demand all the remedies in the first suit." Wright & Miller § 4408 (3d ed. 2021).

[¶59.] Here, Bret was aware of each and every fact necessary to have brought his quiet title action in 2017. Instead, he elected to pursue different claims and remedies whose lack of success should have signaled the end of the dispute. He cannot now extend the life of those claims against members of his family by repurposing them in an effort to litigate the same wrong premised upon the same facts. Though his notice of claim may have been timely filed, the cause of action is precluded, and the notice should be voided on this basis. *See Estate of Johnson v. Weber*, 2017 S.D. 36, ¶ 15, 898 N.W.2d 718, 726 ("We will affirm a circuit court's decision [to grant summary judgment] so long as there is a legal basis to support its decision." (citation omitted)).

***Costs and Attorney Fees***

[¶60.] HRI appeals the circuit court's denial of its request for costs and attorney fees under SDCL 43-30-9. The text of SDCL 43-30-9 provides:

> No person shall use the privilege of filing notices hereunder for the purpose of slandering the title to land and in any action brought for the purpose of quieting title to land, if the court shall find that any person has filed a claim for the purpose only of slandering title to such land, he shall award the plaintiff all the costs of such action, including attorney fees to be fixed and allowed to the plaintiff by the court, and all damages that plaintiff may have sustained as the result of such notice of claim having been filed for record.

[¶61.] A court's determination of a motion for attorney fees is ordinarily reviewed for an abuse of discretion. *See Brown v. Hanson*, 2011 S.D. 21, ¶ 31, 798 N.W.2d 422, 430. However, where the predicate elements of SDCL 43-30-9 exist,

the statute *requires* the court to award attorney fees. *See id.* (stating that questions of statutory interpretation are reviewed de novo).

[¶62.] Here, HRI presented no evidence to the circuit court concerning Bret's purpose for filing the notice of claim. Instead, HRI relies again upon our decision in *Healy v. Osborne* and invokes the doctrine of issue preclusion for a second time, arguing that our affirmance of the circuit court's award of attorney fees in that case conclusively determined that Bret's claims were frivolous and malicious and, therefore, Bret could only have filed the notice of claim for the purpose of slandering title. The circuit court rejected the argument, concluding "the [c]ourt, cannot, from this record, make a determination that [the notice was filed] solely for the purpose of slandering title[.]"

[¶63.] Issue preclusion does not apply to this question. In *Healy v. Osborne*, we affirmed the circuit court's attorney fee award because we determined Bret acted to stop the sale of the Ranch, "not because he believed his partnership interest remained enforceable." 2019 S.D. 56, ¶ 37, 934 N.W.2d at 567. In so doing, we relied, in part, upon Bret's own admission that he filed the lawsuit to "stop the sale" of the Ranch. *Id.* At most, our decision in *Healy v. Osborne* determined that Bret used time-barred claims in an effort to prevent his brothers from selling the Ranch.

[¶64.] But even if a court could conclude from these prior admissions that Bret's motivation for filing the notice of claim at issue here was no different than his reason for commencing the action in *Healy v. Osborne*, SDCL 43-30-9 contains a particularly demanding standard. The statute conditions an award of attorney fees upon a finding that the party who filed a notice of claim did so "for the purpose *only*

of slandering title[.]" SDCL 43-30-9 (emphasis added). That issue has not been previously litigated and the circuit court correctly concluded that the record was insufficient to meet the standard under SDCL 43-30-9. From our review of the record, the circuit court's denial of HRI's request for attorney fees was not erroneous.[14]

**Conclusion**

[¶65.] For the foregoing reasons, we affirm the circuit court's decision to void the notice of claim and its decision to deny attorney fees under SDCL 43-30-9.

[¶66.] KERN, DEVANEY, and MYREN, Justices, and SOGN, Circuit Court Judge, concur.

[¶67.] JENSEN, Chief Justice, deeming himself disqualified, did not participate.

[¶68.] SOGN, Circuit Court Judge, sitting for JENSEN, Chief Justice, disqualified.

---

14. HRI has also filed a motion requesting appellate attorney fees, which we deny.